11TH CIRCUIT DOCKET NO:  11-15743-F

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

SAFE HURRICANE SHUTTERS, INC.
a FLORIDA CORPORATION d/b/a
ADVANCED HURRICANE PROTECTION,
EDWARD LEIVA, STEVE HEIDELBERGER
and FRANCIS MCCARROLL,

      Defendant-Appellants.

v.

REINALDO RAMON LAMONICA, ET AL.
(MARIO FELICIANO and AUGUSTIN MILAN),

      Plaintiff-Appellees,

_____/


APPELLEES' BRIEF IN RESPONSE

                        J.H. ZIDELL, ESQUIRE
                        K. DAVID KELLY, ESQUIRE
                        J.H. ZIDELL, P.A.
                        ATTORNEYS FOR APPELLEES
                        300 71st Street, Suite 605
                        Miami Beach, Florida 33141
                        Telephone (305) 865-6766

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

<u>CERTIFICATE OF INTERESTED PERSONS</u>

1.    Guillermo Alborez (Plaintiff that was dismissed)

2.    Julio Alborez (Plaintiff that was dismissed)

3.    Peter Joseph Marshall Bober, Esq. (Former Plaintiffs' Counsel)

4.    Samara Robbins Bober, Esq. (Former Plaintiffs' Counsel)

5.    Harry Boreth, Esq. (Defendant/Appellants' Counsel)

6.    Burr & Smith (Plaintiff/Appellees' Counsel)

7.    Judge James I. Cohn (District Judge assigned)

8.    Barry G. Feingold, Esq. (Defendant/Appellants' Counsel)

9.    Mario Felicano (Plaintiff/Appellee)

10.   Judge Jose A. Gonzalez, Jr. (District Judge that presided over trial)

11.   Steve Heidelberger (Defendant/Appellant)

12.   K. David Kelly, Esq. (Plaintiff/Appellees' Counsel)

13.   Sarah Ruth Klein (Former Plaintiffs' Counsel)

14.   Chris Kleppin, Esq. (Defendant/Appellants' Counsel)

15.   Reinaldo Ramon Lamonica (Plaintiff that was dismissed)

16.   Edward Leiva (Defendant/Appellant)

17.   Marguerite Maria Longoria, Esq. (Plaintiff/Appellees' Counsel)

18.   Francis McCarroll (Defendant/Appellant)

19.   Augustin Milan (Plaintiff/Appellee)

20.   Ronaldo Gomez Morsa (Plaintiff that was dismissed)

21.   Giovani Perez, *Pro Se* (Plaintiff that was dismissed)

22.   Angeles Lamonica Soler (Plaintiff that was dismissed)

23.   Sam Jones Smith, Esq. (Plaintiff/Appellees' Counsel)

24.   Pedro Lopez Vasques, *Pro Se* (Plaintiff that was dismissed)

25.   Safe Hurricane Shutters, Inc.,    (Defendant/Appellant)
      a Florida Corporation d/b/a
      Advanced Hurricane Protection

26.   J.H. Zidell, Esq. (Plaintiff/Appellees' Counsel)

27.   J.H. Zidell, PA (Plaintiff/Appellees' Counsel)

28.   Kristopher Walter Zinchiak, Esq. (Defendant/Appellants' Counsel)

SAFE HURRICANE SHUTTERS, INC. ET AL. V.
LAMONICA, ET AL. / 11-15743-F

## STATEMENT REGARDING ORAL ARGUMENT

The Appellees listed in the above Certificate of Interested Parties do

<u>not</u> request oral argument, and believe oral argument is not necessary.

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS …………………C1-2

TABLE OF CONTENTS …………………………………………ii

TABLE OF CITATIONS ……………………………………....…iii

STATEMENT REGARDING ORAL ARGUMENT ……………..i

STATEMENT OF JURISDICTION ……..…………………………..1

STATEMENT OF THE ISSUES …………………………………..2

INTRODUCTION ……………………………………………….....3

STATEMENT OF THE CASE AND FACTS………………….....4

SUMMARY OF THE ARGUMENT ……..………………….....6

ARGUMENT ………………….……………………………....7

CONCLUSION ...……………………………………….…...34

CERTIFICATE OF SERVICE ………...…………………….….36

CERTIFICATE OF COMPLIANCE ……………………….…...37

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## <u>TABLE OF CITATIONS</u>

*Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000)................................7

*Anderson v. Mt. Clemmons Potter*, 328 U.S. 680 (1946)......................21

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (U.S. 1981)…………………………………………………23

*Barrera et al v. Weiss & Woolrich Southern
Enterprises, Inc. and C.G.R. Contractors, Co., Inc.*,
Case No.: 09-21841-CIV-Graham/Torres………………………………24

*Davis v. Friendly Express, Inc.*,
2003 WL 21488682 (11th Cir. 2003)…………………………………….18

*Diaz v. Jaguar Rest. Group, LLC*, 2010 U.S. App. LEXIS 25361
(11th Cir. Fla. Dec. 13, 2010)…………………………………………..20

*Donahay v. Palm Beach Tours & Transportation*,
243 F.R.D. 697 (S.D. Fla. 2007)……………………………….………20

*Donovan v. Janitorial Servs, Inc.,* 672 F.2d 528
(5th Cir. 1982)……………………………………………………………....8

*Dzafic v. Geovera Specialty Ins. Co.*,
2008 U.S. Dist. LEXIS 60721 (M.D. Fla. July 31, 2008)………………19

*Galdames v. N & D Investment Corp.*,
Nos. 10-11984 & 10-14523 (6/23/11)………………………………..……24

*Garcia v. Allsup's Convenience Stores, Inc.*,
167 F.Supp.2d 1308 (Dist. N.M. 2001)…………………………………17

*Gastaldi v. Sunvest Resort Cmtys., LC*,
2010 U.S. Dist. LEXIS 9876 (S.D. Fla. Feb. 3, 2010),
citing *O'Halloran*, 969 So. 2d at 1044……………………………...…22

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132
(2nd Cir. 1999)……………………………………………………….…8

*Lee v. Askin Trucking, Inc*., 2006 U.S. Dist. LEXIS 97552
(S.D. Fla. Feb. 7, 2006)…………………………………………….……23

*Levin v. City of Palm Beach Gardens*
*City Attorney's Office*, 303 Fed. Appx. 847 (11th Cir. 2008)………..…7

*Martinez-Pinillos v. Air Flow Filters, Inc*., 09-22453 (2010)………....24

*McCollem v. Chidnese*, 832 So. 2d 194 (Fla. 4th DCA 2002)……….22

*McWhorter v. Birmingham*, 906 F.2d 674 (11th Cir. 1990)…………..8

*Obando v. M&E Investment Properties*, Inc.,
11-20318-MOORE…………………………………………………....…FN3

*Olivas v. A Little Havana Check Cash, Inc*.,
324 Fed. Appx. 839 (11th Cir. Fla. 2009)……………………….……9

*Palma v. Safe Hurricane Shutters, Inc. et al.*,
07-22913-CIV-
SIMONTON…………………………………………………………FN4

*Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir. 1988)…………..24

*Rodriguez v. Farm Stores Grocery, Inc.*,
518 F.3d 1259 (11th Cir. 2008)……………………………………18

*Solano v. A Navas Party Production, Inc.*,
09-22847-CIV-ALTONAGA (2010)…………………………………24

## **STATUTORY/OTHER AUTHORITY**

28 U.S.C. 1291……………………………………………………………1

29 U.S.C. 203……………………………………………………………15

29 U.S.C. Sections 201-216……………………………………………4

Fed.R.Civ.P. Rule 50……………………………………………....…2

Fed.R.Evid. Rule 804(a)(3)……………………………………………27

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## STATEMENT OF JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C.

1291 because it involves the appeal of a final decision of a district court.

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## STATEMENT OF THE ISSUES:

1.      Whether the district court committed reversible error by not granting Rule 50 with respect to individual liability regarding Appellant Heidelberger and Appellant McCarroll.

2.      Whether the district court committed reversible error for not reducing the amount of the awards set forth in the Final Judgment regarding withholdings.

3.      Whether the district court committed reversible error regarding the fluctuating workweek ruling.

4.      Whether the district court committed reversible error for not granting Rule 50 regarding Appellants' *in pari delicto* arguments.

5.      Whether the district court committed reversible error for rejecting Appellants' arguments that the wage claims were fabricated.

6.      Whether the district court committed reversible error for rejecting Appellants' arguments regarding sufficiency of evidence concerning overtime hours worked.

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## INTRODUCTION

The Appellees Augustine Milan and Mario Feliciano were the

Plaintiffs in the proceeding below.  The Appellants Safe Hurricane Shutters,

Inc. et al. were the Defendants in the proceeding below.  In this Brief, the

Appellants will be referred to as the "Appellants", and the Appellees will be

referred to as the "Appellees".  References to the applicable transcripts

herein will be referenced by their respective docket entry numbers and

volumes filed in the district court below as follows for example:  Trial

Transcripts, Vol. 3, P54.  [R, DE 236].

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## STATEMENT OF THE CASE AND FACTS

The Appellees were employed by Appellants to install hurricane shutters, and subsequently brought an action against Appellees under the Fair Labor Standards Act 29 U.S.C. Sections 201-216 and the Florida Constitution and statutes for unpaid overtime and minimum wages respectively. [DE 37]. Appellees refer to the trial transcripts referenced herein *infra* regarding further details concerning their job duties. Following a jury verdict entered in favor of Appellees [DE 193], the district court went on to reject all of Appellants' Rule 50 arguments and requests for a new trial [DE 264].

For the legal reasons set forth below in light of the factual record *infra*, Appellants Heidelberger and McCarroll were properly found individually liable as Appellees' FLSA employers. *See*, Section I *infra* in Appellees' Argument section. Moreover, the district court's final judgment should not be altered. *See*, Section II *infra* in Appellees' Argument section. In addition, as set forth below, based on the applicable law in light of the record evidence *infra*, the fluctuating workweek argument raised by Appellants was correctly rejected. *See*, Section III *infra* in Appellees' Argument section. Moreover, Appellants' in *pari delicto* arguments are

4

without merit and were properly rejected. *See*, Section IV *infra* in Appellees' Argument section. Moreover, the district court correctly upheld the jury's decision as to who it believed regarding Appellants' prejudicial fabrication arguments. The jury heard the evidence and rejected Appellants' arguments that Appellees' claims were fabricated. *See*, Section V *infra* in Appellees' Argument section. Finally, as found by the district court, sufficient evidence is set forth in the record upon which the jury reasonably based its damages award. [DE 264]. *See*, Section VI *infra* in Appellees' Argument section.

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## SUMMARY OF THE ARGUMENT:

Appellants Heidelberger and McCarroll were properly found individually liable as FLSA employers.  The district court's final judgment should not be altered, and the fluctuating workweek method was correctly rejected.    Appellants' in *pari delicto* arguments raised in this appeal are without merit.    The district court correctly allowed the jury to make the decision as to who it believed regarding Appellants' prejudicial fabrication arguments.  And finally, sufficient evidence is set forth in the record upon which the jury reasonably based its damages award in favor of the Appellees.

SAFE HURRICANE SHUTTERS, INC. ET AL. V
LAMONICA, ET AL. / 11-15743-F

## ARGUMENT

### ***Standard regarding Rule 50 Motions and Motions for New Trial***

The district court below correctly denied Defendants' Rule 50 motion

and motion for new trial.  As stated in *Levin v. City of Palm Beach Gardens*

*City Attorney's Office*, 303 Fed. Appx. 847 (11th Cir. 2008), "[w]e review

the grant of a Rule 50 motion for judgment as a matter of law *de novo*,

applying the same standards as the district court. *Abel v. Dubberly*, 210 F.3d

1334, 1337 (11th Cir. 2000)**.**  Judgment as a matter of law is warranted '[i]f

a party has been fully heard on an issue during a jury trial and the court finds

that a reasonable jury would not have a legally sufficient evidentiary basis to

find for the party on that issue . . . .' Fed.R.Civ.P. 50(a)(1). 'Although we

look at the evidence in the light most favorable to the non-moving party, the

non-movant must put forth more than a mere scintilla of evidence suggesting

that reasonable minds could reach differing verdicts.' *Abel*, 210 F.3d at

1337."  As set forth below, there was certainly more than a mere scintilla of

evidence that allowed the jury to find in Appellee Felicano's and Appellee

Milan's favors.

The Eleventh Circuit has found that a district court's decision to grant

a new trial based on prejudicial conduct or pernicious behavior is less likely

to constitute an abuse of discretion than a grant of a new trial based on some

other ground "because the trial judge who is actually present at trial, . . . [is]

best able to determine whether the proceeding has been 'contaminated' by

events outside the jury's control." *McWhorter v. Birmingham*, 906 F.2d 674,

677 (11th Cir. 1990).  The record cited below demonstrates the trial in this

matter was not tainted by prejudicial conduct or pernicious behavior, and

this Court should permit the jury's verdict and district court's rulings in

Appellees' favor to stand.   The record set forth *infra* shows that a

reasonable jury did have a legally sufficient evidentiary basis to find in favor

of the Appellees, and the district court did not commit any reversible error.

I.     **THE DISTRICT COURT DID NOT COMMIT REVERSIBLE
       ERROR BY NOT GRANTING RULE 50 WITH RESPECT TO
       INDIVIDUAL   LIABILITY   REGARDING   APPELLANT
       HEIDELBERGER AND APPELLANT MCCARROLL AND A
       NEW TRIAL SHOULD NOT BE GRANTED**.

Even if Appellants Heidleberger's and McCarroll's control had been

restricted or occasional, such would not diminish the significance of the

existence of such control.  *See, e.g., Herman v. RSR Sec. Servs. Ltd.*, 172

F.3d 132, 139 (2nd Cir. 1999), *citing Donovan v. Janitorial Servs, Inc.,* 672

F.2d 528, 531 (5th Cir. 1982)( "[D]oes not require continuous monitoring of

employees, looking over their shoulders at all times, or any sort of absolute

control of one's employees. Control may be restricted, or exercised only

occasionally, without removing the employment relationship from the

protections of the FLSA, since such limitations on control "do[] not diminish

the significance of its existence." *Donovan v. Janitorial Servs., Inc*., 672

F.2d 528, 531 (5th Cir. 1982); see *Superior Care*, 840 F.2d at 1060; *Carter*,

735 F.2d at 12-13.") *See also*, *Olivas v. A Little Havana Check Cash, Inc*.,

324 Fed. Appx. 839, 846 (11th Cir. Fla. 2009)( "*See Donovan v. Janitorial*

*Servs., Inc*., 672 F.2d 528, 531 (5th Cir. 1982) (stating that occasional

control does not diminish the significance of the existence of such control).

Thus, we reverse the district court's ruling on this point and remand for a

jury trial to determine whether Mrs. Rodriguez was an "employer" within

the meaning of the FLSA."). Trial Transcripts, Vol. 5, P108-112. [R, DE

236].

Witness Mr. Yerko Aguirre worked for the Appellants from the time the

company opened until it closed, March 2006 through September 2007. Trial

Transcripts, Vol. 1, P116. [R, DE 236]. Aguirre knows who both

Appellants Heidleberger and McCarroll are. Trial Transcripts, Vol. 1, P127.

[R, DE 236]. McCarroll spent 2 or 3 weeks per month at the company.

McCarroll supervised jobs and sent workers out with orders. Trial

Transcripts, Vol. 1, P128-129. [R, DE 236]. McCarroll admitted he was

present about 40% of the time. Trial Transcripts, Vol. 3, P54. [R, DE 236].

9

Heidleberger met with the workers to resolve money problems to ensure the workers would be paid and that they would be working. McCarroll was also present. Both Heidleberger and McCarroll indicated they would resolve the problem concerning workers not being paid. Trial Transcripts, Vol. 1, P130. [R, DE 236]. Witness Rolando Ibacache also identified both Heidleberger and McCarroll at the trial and started working for Appellants in April 2006. Trial Transcripts, Vol. 2, P5. [R, DE 236]. Mr. Ibacache testified Heidleberger specifically spoke with him about salaries and to resolve related issues. Trial Transcripts, Vol. 2, P15. [R, DE 236].

The district court in its summary judgment order noted disputed facts in that Leiva claimed that Heidelberger visited only a few times and "knew nothing" about Defendants' wage polices. [R, DE 127] at 10. In contrast, the aforesaid facts at trial show Heidelberger took an active role in the employees' wages and did visit on a more regular basis than alleged by Appellants. McCarroll also played an active role regarding the payment of employee wages and was present more often than Heidleberger.

Ibacache estimated that he saw Heidleberger at the business three times per month, but McCarroll would come twice per month and stay for week long periods. Heidleberger would visit the jobs sites. McCarroll

10

would also go to the job sites to keep track of the jobs and observe hurricane shutter installations.  Trial Transcripts, Vol. 2, P16, 17.  [R, DE 236].

Appellant McCarroll testified that he was an owner of the corporate Appellant from January or February 2006 through the company's duration. Both Heidleberger  and McCarroll each owned 22 and ½ percent.  Trial Transcripts, Vol. 3, P43.  [R, DE 236].  McCarroll invested about $600,000 in the corporate Appellant and Heidleberger about $400,000.  Appellants' co-defendant Leiva also owned 22 and ½ percent and invested about $200,000.  Trial Transcripts, Vol. 3, P44.  [R, DE 236].  McCarroll tried to allege at trial that he was not an officer of the corporate Appellant but rather a director, and he denied that he had a corporate title such as president or vice-president.  Thereafter however, McCarroll admitted that he held himself out to the public as being vice president of the corporate Appellant.   Trial Transcripts, Vol. 3, P45, P46.  [R, DE 236].   Moreover, the jury had the opportunity to consider a rebuttal exhibit with respect to a business card that listed McCarroll as a vice president of the corporate Appellant.  Trial Transcripts, Vol. 5, P88.  [R, DE 236].  Such evidence undoubtedly damaged McCarroll's credibility before the jury in light of his contradictory denials.

Heidleberger claimed he invested $407,000, alleged he was a director not an officer, and that he also owned 22 and ½ percent of the company. Trial Transcripts, Vol. 3, P106. [R, DE 236]. Heidleberger also testified that he paid $20,000 on his own credit to pay workers their unpaid wages, and he also met with Appellee Feliciano and other workers regarding wage complaints. Heidleberger flew in and did an analysis of accounts payable and receivable for the corporate Appellant. Heidleberger met with the workers and showed them a charge and told them how Appellant would "try" to pay them. Trial Transcripts, Vol. 3, P110-11. [R, DE 236]. Heidleberger would talk on the phone with co-defendant Eddie Leiva about how the business was operating about every "ten days" or "two weeks". Trial Transcripts, Vol. 3, P116. [R, DE 236].

McCarroll admitted he hired and fired employees. Perhaps he hired 4-5 salespersons. McCarroll fired 2 installers and an engineer. At one point both Heidleberger and McCarroll escorted employee Tom Sullivan out of the building because he was allegedly stealing. Trial Transcripts, Vol. 3, P53. [R, DE 236]. Importantly, Appellant Heidleberger testified that Tom Sullivan was in charge of the operations of the company concerning manufacturing. Heidleberger admitted that he and McCarroll escorted Sullivan out of the building. Trial Transcripts, Vol. 3, P109. [R, DE 236].

12

Thus, Heidleberger admitted at trial that he and McCarroll escorted the head of the company's manufacturing "wing" (Trial Transcripts, Vol. 3, P109) [R, DE 236] off the premises, yet the Appellants are now disingenuously attempting to argue the jury did not have sufficient reason to find that Heidleberger and McCarroll had adequate operational control to be considered FLSA employers. To the contrary the jury had ample reason to find that Heidleberger and McCarroll had significant operational control and authority and were correctly found to be Appellees' FLSA employers. At the conclusion of the trial in this matter, the Court instructed the jury regarding operational control. The Court explained that co-defendant Leiva was already found to be an FLSA employer, but that the jury needed to make a determination regarding Heidleberger and McCarroll Trial Transcripts, Vol. 6, P107. [R, DE 236].

McCarroll was a signatory on the business accounts, was authorized to sign checks and admittedly did at least one time sign about 30 payroll checks. Trial Transcripts, Vol. 3, P46-47. [R, DE 236]. McCarroll admitted he may have signed the lease for the corporate Appellant, and also he did sign personal guarantees for the company. McCarroll even signed a hold harmless agreement in relation to the corporate Appellant concerning

work orders (work orders that workers such as Appellee Feliciano would fulfill).  Trial Transcripts, Vol. 3, P49-51.  [R, DE 236].

McCarroll also went out and hired more salesmen and altered the draw system that was used to pay such salesmen. Trial Transcripts, Vol. 3, P56.  [R, DE 236].  Later, McCarroll informed the installers that they were not going to be paid (which he said was difficult) and the workers understood and did not need a translator.  Trial Transcripts, Vol. 3, P57.  [R, DE 236].  During a discussion about the inability to pay the workers, Appellant Heidleberger then suggested they raise prices so they could meet "expenses".  Heidleberger came up with a plan regarding square footage pricing. Trial Transcripts, Vol. 3, P59-60.  [R, DE 236].

Appellee Feliciano also provided trial testimony supporting the jury's finding that McCarroll and Heidleberger were Appellees' FLSA employers and therefore liable along with the corporate Appellant.  McCarroll was introduced to Appellee Feliciano as Feliciano's boss.  According to Feliciano, McCarroll was present 2-3 weeks per month.   Feliciano had to often be in contact with McCarroll to get instructions and work orders, and McCarroll would supervise.  Trial Transcripts, Vol. 4, P28-30, 33 [R, DE 236].  Heidleberger was also introduced to Feliciano as a boss.  Heidleberger would be present monthly for several days and they would communicate,

14

and Heidleberger would inquire about the jobs and supervise.  Heidleberger participated in an employee meeting regarding unpaid wages and provided assurances so that Feliciano would not quit because he was not getting paid. Trial Transcripts, Vol. 4, P37-45.  [R, DE 236].  Feliciano did not quit due to assurances of payment by both Heidleberger and McCarroll. Trial Transcripts, Vol. 4, P45.  [R, DE 236].  The district court explained to the jury in the instructions the importance of controlling employee "compensation" in relation to operational control.  Trial Transcripts, Vol. 6, P108.  [R, DE 236].

At trial, Appellants unsuccessfully raised Rule 50 arguments regarding individual liability.  Appellants argued that Heidleberger and McCarroll  were merely directors with non-majority ownership.  Trial Transcripts, Vol. 5, P97-100.  [R, DE 236].  However, as argued by Appellees at trial during Rule 50 arguments, under 29 U.S.C. 203(d) the term employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.   Such is another reason why Appellants' arguments that attempt to distinguish between officers and directors should be rejected.

15

Trial Transcripts, Vol. 5, P107.  [R, DE 236].  The jury instructions in this

matter apprised the jury of the language found in 203(d).  Trial Transcripts,

Vol. 6, P107.  [R, DE 236].  Moreover, the jury had the opportunity to

consider a rebuttal exhibit with respect to a business card that listed

McCarroll as a vice president of the corporate Appellant.  Trial Transcripts,

Vol. 5, P88.  [R, DE 236].  Such evidence undoubtedly damaged

McCarroll's credibility before the jury in light of his contradictory denials.

The jury likely found it transparent and obvious that Heidleberger and

McCarroll  were simply trying to pass the buck to *pro se* co-defendant Mr.

Leiva who is allegedly insolvent along with the dissolved Corporate

Appellant.

II.    **THE DISRICT COURT DID NOT COMMIT REVERSIBLE
       ERROR REGARDING APPELLANTS' ARGUMENTS ON
       PAGE 33 ET SEQ. OF THEIR BRIEF.**

Concerning  Appellee  Milan's  citizenship  status  referenced  in  the

Appellants' caption in Part II, Appellees will address such issue *infra* in Part

IV regarding Appellants' *in pari delicto* arguments.  For purposes of brevity,

regarding  the  withholdings,  Appellees  refer  to  the  record  below  filed  in

response to [R, DE 218] including but not limited to [R, DE 224].  It appears

16

Appellants failed to withhold taxes in relation to a significant portion of its work force during the entire time the corporate Appellant operated.[1]

### III. THE DISRICT COURT DID NOT COMMIT REVERSIBLE ERROR REGARDING THE FLUCTUATING WORK WEEK AND A NEW TRIAL IS NOT WARRENTED.

As stated in *Garcia v. Allsup's Convenience Stores, Inc.,* 167 F.Supp.2d 1308, 1311-12  (Dist. N.M. 2001):  "Under the Fair Labor Standards Act, 29 U.S.C.S. Section 201 et seq., in order for the fixed salary method [concerning the fluctuating work week method] to be properly invoked, each of five criteria must be satisfied: (1) the employee's hours must fluctuate from week to week, (2) the employee must receive the same fixed salary regardless of the number of hours worked during the workweek, (3) the salary must be sufficiently large to provide an average hourly compensation at a rate not less than minimum wage, (4) the parties must have a clear, mutual understanding that the employer will pay the employee the fixed weekly salary regardless of the hours worked, and (5)

---

[1] As set forth in the record below including but not limited to [R, DE 224], it seems that Appellants admitted during the underlying litigation, that they violated tax laws by failing to withhold taxes for their employees during the entire existence of the corporate Appellant.  Consequently, Appellants seem to seek to alter the Final Judgment in relation to admitted criminal tax violations committed by the Appellants who failed to withhold employee wages.

17

the employee must receive extra compensation for all overtime hours worked." [R, DE 236].

Under the rational in *Allsup's Convenience Stores, Inc.,* in the instant matter the jury was free to believe based on the trial testimony that: (1) the Parties did not have a clear, mutual understanding that the Appellants would pay the Appellees the fixed weekly salary regardless of the hours worked; and (2) the Appellees did not receive extra compensation for all overtime hours worked.   A lack of requisite mutual understanding is another reason that shows Appellants' citation to cases such as *Davis v. Friendly Express, Inc*., 2003 WL 21488682 (11th Cir. 2003) is misplaced. [R, DE 236].

In any event, in *Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1269 (11th Cir. 2008), the Eleventh Circuit held that "where the [non-exempt] employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate--not necessarily the number of hours he actually works--is the divisor" for calculating the employee's regular rate.   For example, witness Mr. Aguirre who also worked for Appellants testified at trial that he was paid initially $900 per week for 40 hours of work.   Trial Transcripts, Vol. 1, P118.   [R, DE 236]. Appellants' other employee Rolando Ibacache testified that when he

18

started working the agreement was for $600 per week for 40 hours of work. 40 hours was agreed even notwithstanding raises. Trial Transcripts, Vol. 2, P7-8, 13-14. [R, DE 236]. Appellee Feliciano testified that initially he was hired to work 40 hours per week for $800 per week. Trial Transcripts, Vol. 3, P148. [R, DE 236].

At trial, Appellants unsuccessfully raised Rule 50 arguments regarding how Appellees' hours should be calculated for payment purposes. Trial Transcripts, Vol. 5, P100-101, P113-114. [R, DE 236]. The jury had basis to find that Appellees were only paid for the first (40) hours of their work. As indicated by the trial transcript, this district court below denied Appellees' Rule 50 arguments. Trial Transcripts, Vol. 5, P124. [R, DE 236].

Moreover, as indicated in [DE 24] and [DE 42], neither *pro se* Mr. Leiva nor the other Appellants pled the fluctuating work week as an affirmative defense. Thus, such defense was waived. Any attempt by Appellants to assert additional affirmative defenses would have required leave from the district court to amend. *Dzafic v. Geovera Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 60721 (M.D. Fla. July 31, 2008). Moreover, Appellees did not expressly or impliedly consent to Appellants amending their pleadings. The Eleventh Circuit previously reversed the district court

19

for allowing defendant-employers to amend their pleadings to assert an affirmative defense at trial. *Diaz v. Jaguar Rest. Group, LLC*, 2010 U.S. App. LEXIS 25361 (11th Cir. Fla. Dec. 13, 2010)(Court found a classic case of waiver when defendants failed to plead the administrative exemption prior to trial). *See also, Donahay v. Palm Beach Tours & Transportation*, 243 F.R.D. 697 (S.D. Fla. 2007) (defendants sought to amend answer and affirmative defenses seeking a declaration that would trigger the Motor Carrier Act, and this Court found that simply failing to timely plead is not good cause). In the instant matter, Appellants did not even move to amend. Appellants have thus waived any fluctuating work week defense. [R, DE 236].

Finally, the district instructed the jury that it was Appellees' theory that they were not paid straight time or overtime. And therefore it was in the jury's discretion to decide whether the evidence showed that the Appellees were paid nothing for hours worked in excess of (40) hours. The Court also explained that some minimum wage damages were sought for some of the wages that were completely unpaid. Trial Transcripts, Vol. 6, P101-102. [R, DE 236]. As to the overtime (deducting vacations days), Appellee Feliciano during closing statements sought $33,750; in total he sought $34,568.80 factoring in unpaid minimum wages. Trial Transcripts, Vol. 6,

P25-26.  [R, DE 236].  Based on (4) weeks of work, Appellee Milan

requested $1,785 during closing.   Trial Transcripts, Vol. 6, P31  [R, DE

236].  With respect to those figures, a review of the record in context shows

Appellees' counsel provided a detailed explanation of why those damage

amounts were sought.  As indicated by [DE 193], the jury awarded Feliciano

$20,849.38 and Milan $1,312.50.  Clearly the jury was generously fair to the

Appellants in awarding less than was requested, particularly in light of the

fact that Appellants failed under *Anderson v. Mt. Clemmons Potter*, 328 U.S.

680 (1946) to maintain time records.  Consequently, the jury was required to

piece together the award based on testimony from various witnesses over

several days.  The Court explained to the jury that it was Appellants' burden

to maintain time records, how the burden shifts to the employer, and that

damages claimed by the employee can be "approximate."  Trial Transcripts,

Vol. 6, P102-103.  [R, DE 236].  The Court also explained in-depth that

work is compensable insofar that is performed for the benefit of the

employer, and the jury was apprised regarding bona fide meals and breaks.

Trial Transcripts, Vol. 6, P103-104 et seq.  [R, DE 236].  *Pro se* co-

defendant Leiva admitted time records were not kept, and his excuse was

that the employees had a salary and "loved it."  Leiva admitted the installers

were not paid time and one-half overtime pay, and Leiva knew about

21

overtime pay.  Trial Transcripts, Vol. 5, P76-77.  [R, DE 236].  The jury had

significant justification to find against Appellants in this matter.

IV.    **THE DISRICT COURT DID NOT COMMIT REVERSIBLE ERROR WHEN IT REJECTED APPELLANTS'** *IN PARI DELICTO* **ARGUMENTS.**

The Court should reject Appellants' *in pari delicto* arguments.[2]  The

concept of *in pari delicto* is an outcome or a result of the defense of unclean

hands, "in pari delicto, which is a "corollary of the doctrine of unclean

hands." *O'Halloran*, 969 So. 2d at 1044 n.3." *Gastaldi v. Sunvest Resort*

*Cmtys., LC*, 2010 U.S. Dist. LEXIS 9876 (S.D. Fla. Feb. 3, 2010). Failure to

file income taxes and issues regarding the validity of the employment

application have no direct relationship to the fact of whether the Appellees

worked overtime for Appellants and whether Appellees were paid by

Appellants for said work. "The conduct constituting the unclean hands "must

generally be connected with the matter in litigation and must affect the

adverse party." *McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. 4th DCA

---

[2] As set forth in the record below including but not limited to [R, DE 224], it seems that Appellants admitted during the underlying litigation, that they violated tax laws by failing to withhold taxes for their employees during the entire existence of the corporate Appellant.  Consequently, Appellants seem to have admitted criminal tax violations committed by the Appellants who failed to withhold employee wages.   It seems illogical for Appellants to now try to raise such unclean hands arguments as an excuse for violating the federal wage and hour laws when they were also violating federal tax laws.

2002). *Gastaldi v. Sunvest Resort Cmtys., LC*, 2010 U.S. Dist. LEXIS 9876 (S.D. Fla. Feb. 3, 2010). [R, DE 236]. In addition, the Supreme Court has repeatedly declared that a worker's rights to overtime wages cannot be waived or abridged by contract; they are "inalienable" in the employment law context. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (U.S. 1981). [R, DE 236].

Generally, the affirmative defense of unclean hands is not recognized in FLSA cases.

> [t]he Court finds that the defense of unclean hands, which would act to deny Plaintiff equitable relief on the theory that he himself engaged in reprehensible conduct, is unavailing. The above-cited cases clearly establish that the FLSA-prescribed minimum wage cannot be waived under any circumstances. Id. ("The obligation [to comply with the FLSA] is the employer's and it is absolute."). Whether or not Plaintiff engaged in reprehensible conduct would therefore have no bearing on Defendant's obligation to compensate Plaintiff accordingly. Defendant's affirmative defenses of waiver, estoppel and unclean hands are therefore stricken as to Plaintiff's FLSA claim.

*Lee v. Askin Trucking, Inc.*, 2006 U.S. Dist. LEXIS 97552 (S.D. Fla. Feb. 7, 2006).

Assuming that the doctrine of unclean hands can even apply to an FLSA lawsuit, the matter of whether Appellees filed income taxes or were truthful in the job application process has no connection with the matter of

this lawsuit and the Appellees' right to overtime wages.   If Appellants' arguments were accepted, an employer would be allowed to hire an illegal alien, pay them in cash at $1.50/hr for 70 hours a week, and then claim *in pari delicto* barring the illegal alien from collecting minimum wages and overtime which is contrary to the Eleventh Circuit ruling in *Patel v. Quality Inn South*, 846 F.2d 700 (11th Cir.. 1988). Appellants' counsel has filed motions seeking similar relief in the case of *Jorge Alberto Barrera et al v. Weiss & Woolrich Southern Enterprises, Inc. and C.G.R. Contractors, Co., Inc.* Case No.: 09-21841-CIV-Graham/Torres, wherein the district court on page 4 of his decision stated "Similarly, there is no case law supporting Defendants' argument that Plaintiffs' failure to pay federal income taxes requires summary judgment. Summary Judgment on either of the aforementioned basis is DENIED.*"* [R, DE 236].  *See also* Orders in *Solano v. A Navas Party Production, Inc.*, 09-22847-CIV-ALTONAGA (2010), at Page 7 et seq.; *Martinez-Pinillos v. Air Flow Filters, Inc.*, 09-22453 (2010), at FN8.   In both *Solano* and *Martinez-Pinillos* Appellants' counsel's arguments were also rejected.  [R, DE 236].

Appellants' immigration arguments are contrary to law in the Eleventh Circuit. As set forth in the Eleventh Circuit opinion in *Galdames v. N & D Investment Corp.*, Nos. 10-11984 & 10-14523, at FN2 (6/23/11),

24

defense counsel's argument have been rejected pursuant to *Patel v. Quality Inn South*, 846 F.2d 700, 707 (11th Cir. 1988). *See, Galdames supra*, at FN2. [R, DE 236].

At trial, Appellants unsuccessfully raised Rule 50 arguments regarding the *in pari delicto* doctrine. Trial Transcripts, Vol. 5, P101-104. [R, DE 236]. The district court acknowledged that Appellants did not provide case law to back up their arguments. Although the district court was made aware of *Solano v. A Navas Party Production, Inc.*, 09-22847-CIV-ALTONAGA (2010) where the Southern District of Florida rejected Appellants' counsel's same arguments raised in that matter. Trial Transcripts, Vol. 5, P118-120. [R, DE 236]. As indicated by the trial transcript, this district denied Appellants' Rule 50 arguments in the case at bar. Trial Transcripts, Vol. 5, P124. [R, DE 236].

V.    **THE DISRICT COURT DID NOT COMMIT REVERSIBLE ERROR REGARDING APPELLANTS' ALLEGED FABRICATION ARGUMENTS AND A NEW TRIAL IS NOT WARRANTED.**

The Court should reject Appellants' arguments that allege (pursuant to co-defendant Leiva's allegations) that J.H. Zidell, Esq. of the undersigned firm concocted a scheme whereby he instructed the Appellees (and other co-workers) in the underlying litigation to fabricate claims that they worked an average of (60) hours per week. Appellants' counsel also makes bad faith,

25

vexatious and unfounded allegations, that are unsubstantiated and not part of the record, referencing "fraudulent" actions that involve a "common scheme by Zidell (who has filed over 1,000 FLSA suits) to solicit multiple plaintiffs to file meritless lawsuits". These vexatious and false allegations evince the lack of professionalism on the part of Appellants' counsel. Such false personal attacks should not be condoned by this Court.

Appellants argue that defense counsel "asked for a sidebar, and he was going to proffer" that Leiva was going to provide testimony that was critical regarding the fabrication allegations.

As was argued in the district court by Appellees, Appellants misleadingly cited the trial testimony of Mr. Ibacache out of context claiming the case was fraudulent. As set forth herein, there were various witnesses and types of evidence at trial that substantiated Appellees' claims for damages, and Appellants failed to address the fact that the jury is permitted to make credibility determinations. For example, see Pattern Jury Instruction No. 5 (p. 23) on the Eleventh Circuit's website regarding Credibility of Witnesses. In fact, the Court instructed the jury in this matter that the jury needed to make its own determination as to who was telling the truth and they needed to decide who to "believe or disbelieve". Trial Transcripts, Vol. 6, P98-99. [R, DE 236]. And, Mr. Ibache ended the cited

testimony in stating that that he did not remember.  Trial Transcripts, Vol. 2, P53-54.  [R, DE 236].  Moreover, as was argued in the district court, Appellants did not point to where those allegations concerning Ibacache were raised during Rule 50 arguments at trial, and therefore Appellants were not justified in raising them as renewed.   Likewise, since the issue was not properly raised in the district court, it is waived for purposes of appellate review.  [R, DE 236].

Appellants' counsel argues that he unsuccessfully requested a sidebar during trial, and that he was going to proffer certain testimony from Leiva who claims Ibache admitted outside of Court that Mr. Zidell orchestrated fabrication of the claims.[3]  Appellants argue that under the Federal Rules of Evidence, such statements were statements made by Ibacache against his own interests and therefore excepted from hearsay.  Appellants argue that since Ibacache testified that he could not remember, he was therefore "unavailable" as expressly set forth under Fed.R.Evid. Rule 804(a)(3).

---

[3] In a paperless order dated 9/15/11 from the Southern District of Florida in the matter of *Obando v. M&E Investment Properties*, Inc., 11-20318-MOORE (concerning a disparaging motion where Appellants' counsel wrongfully sought a  show cause order against the undersigned Firm alleging the filing of frivolous claims), the Southern District of Florida found that Appellants' counsel's motion for a show cause order was a "waste [of] the Court's time and resources" and was "apparently" filed "for vexatious purposes."

Even if the Court finds that the hearsay exception would permit other statements Mr. Leiva might have made at trial regarding his alleged conversation with Mr. Ibacache, the Court allowed (over Appellees' counsel's objection) Appellants to question Ibacache about such alleged conversation with Mr. Leiva; as stated Ibacache ended the cited testimony in stating that that he did not remember.  Trial Transcripts, Vol. 2, P53-54. Importantly, Appellants' counsel in his Closing Statement made the very argument he now erroneously claims he was prevented by the district court from making.  For example, in his Closing Statement, Appellants' counsel argued that Appellees' "attorney probably just made this up."   Trial Transcripts, Vol. 6, P65, L10-12.  In even more prejudicial detail, in his Closing Statement, Appellants' counsel argued that Ibacache told Leiva that his attorney fabricated the claim and that Ibacache failed to deny same. Trial Transcripts, Vol. 6, P62.

Consequently, the jury heard Appellants' theory alleging that Appellees' counsel allegedly orchestrated fabrication of the claims, and the Jury rejected such claims and returned a Verdict in Appellees' favor. Appellants claim at Page 52 of their Initial Brief that they were "prevented … from arguing that the case was fabricated by the attorney."  Such is simply untrue as Appellants' counsel, as stated, raised such prejudicial

28

theme during the trial and argued same in his Closing Statement.    As stated above, the Court instructed that the Jury needed to make its own determination as to who was telling the truth and they needed to decide who to "believe or disbelieve."  Trial Transcripts, Vol. 6, P98-99.  Clearly the Jury believed the Appellees in light of all of the other evidence cited herein and in the trial transcripts, and therefore the Appellees prevailed a trial.[4]

## VI.    THE DISRICT COURT DID NOT COMMIT REVERSIBLE ERROR REGARDING APPELLANTS' ARGUMENTS REGARDING THE SUFFICIENCY OF EVIDENCE CONCERNING OVERTIME HOURS WORKED.

Mr. Yerko Aguirre worked for the Appellants from the time the company opened until it closed, March 2006 through September 2007.  Trial Transcripts, Vol. 1, P116.  [R, DE 236].  Aguirre testified at trial that he and Appellee Feliciano worked the same schedule.   They worked Monday through Saturday and started at 7am.  Trial Transcripts, Vol. 1, P118-120.  Breaks were not taken and the workers ate on the run including

---

[4] In the instant matter, Appellants apparently ask this Court to speculate as to why the jury in *Palma v. Safe Hurricane Shutters, Inc. et al.,* 07-22913-CIV-SIMONTON found in favor of Appellants.  Even if the Court reviewed the transcripts of the *Palma* trial this review would not provide the definitive reason(s) the Jury found in favor of Appellants in that other case.  The jury in *Palma* was polled after it rendered the verdict, but the jurors were not questioned as to the reason(s) they found in favor of the Appellants in that other case.  However it is clear in the instant case that is the subject of this appeal, that during the trial and in Closing, Appellants argued that Appellees' counsel fabricated the claims and the Jury rejected such arguments in accordance with the jury instructions.

Appellee Feliciano.  The workers would stop working at 6pm and later such as 7pm and 7:30pm.  Aguirre and Appellee Feliciano would stop at 6pm at the earliest.  Trial Transcripts, Vol. 1, P122, 123.  [R, DE 236].

Witness Ibacache also testified that he and Appellee Feliciano worked for Appellants Monday through Saturday.  Ibacache worked with Appellee Feliciano approximately for (9) months.  Trial Transcripts, Vol. 2, P8-9.  Arrival time was 7-7:15am until and they would return at 6-6:30pm (Saturdays 5:30 or 6pm).  Generally no lunch or breaks.  Trial Transcripts, Vol. 2, P10-12.  Ibacache estimated a (60) hour work week.  Trial Transcripts, Vol. 2, P13.  Ibacache also knows Appellee Milan, and indicated Appellee Milan would start at 7-7:30am and return at around 6pm.  Trial Transcripts, Vol. 2, P12-13.  [R, DE 236].

Appellee Feliciano testified that he worked from August 2006 through September 2007.  Trial Transcripts, Vol. 3, P148. Feliciano would arrive around 7:15-7:20am.  Felicano worked Monday through Saturday and normally finished at 6pm, sometimes 7:30pm.  Trial Transcripts, Vol. 3, P150-51.  During the last months of his employment Feliciano would return back at the Appellants' office most of the time at 7-7:30pm.  Trial Transcripts, Vol. 4, P24-27.  The workers would go to the Appellants' "lounge" first (at times such as 7am, 7:15am 7:20am and were required to

be there no later than 7:30am) and would then travel to the job sites such as the Points of America project.  Feliciano went to the "lounge" to get his work orders.  Trial Transcripts, Vol. 4, P14.  Also, there was approximately 4-5 weeks of back pay that Feliciano never received.  Feliciano said the average was about 60 hours of work per week.  There was no specific lunch hour.  Feliciano in total missed approximately 12 days concerning vacations/days off.  Appellee Milan had a similar starting time, 7:30am at the latest.  Trial Transcripts, Vol. 3, P155-57.  [R, DE 236].

Appellee Feliciano testified that initially he was hired to work 40 hours per week for $800 per week.  Trial Transcripts, Vol. 3, P148. Appellee Feliciano also testified that he was never paid anything for the hours worked in excess of (40) per week.  Appellee Felicano never punched a time card and Appellants did not keep time cards.  Trial Transcripts, Vol. 4, P8-9.  [R, DE 236].

Appellee Milan testified that he started working for Appellants in July of 2007 until the second or third week of September 2007.  However, Milan worked only about (3) days in September in the factory.    Milan worked Monday through Saturday.  Trial Transcripts, Vol. 4, P142-44, 148. Milan would arrive at the shop between 7:10am and 7:15am.  Milan was paid $700 per week.  Trial Transcripts, Vol. 4, P144-45.  Milan would

31

return to the shop about 5pm-5:30pm, and then finish cleaning within 30-35 minutes.   There were no shorter days Monday through Saturday.   Trial Transcripts, Vol. 4, P146.  [R, DE 236].

Co-defendant Leiva admitted time records were not kept, and his excuse was that the employees had a salary and "loved it."  Leiva admitted the installers were not paid time and one-half overtime pay, and Leiva knew about overtime pay.  Appellees Feliciano and Milan were also salaried employees.  Trial Transcripts, Vol. 5, P76-77, P80.  Mr. Leiva then contradicted himself and tried to claim some time records were kept.  Trial Transcripts, Vol. 5, P81.  However, Appellants did not demonstrate to the jury that adequate time records were kept as to Appellees Feliciano and Milan as none were ever introduced as evidence during trial.  Thus, time records were not introduced at trial in relation to Appellees Feliciano and Milan.  [R, DE 236].

At trial, Appellants unsuccessfully raised Rule 50 arguments regarding the evidence of Appellees' damages.  Interestingly, Appellants argued *Anderson v. Mt. Clemmons Potter*, 328 U.S. 680 (1946) notwithstanding that as stated above Leiva admitted time records were not kept (and then he contradicted himself) and no time records were admitted as to Appellees Feliciano and Milan.  Trial Transcripts, Vol. 5, P101-104.

32

Appellees have failed their burden to maintain adequate and complete time records under *Anderson v. Mt. Clemmons Pottery, supra* and such was argued during Rule 50 proceedings.  Trial Transcripts, Vol. 5, P115-118. [R, DE 236].

Finally, the Court instructed the Jury that it was Appellees' theory that they were not paid straight time or overtime.  And therefore it was in the Jury's discretion to decide whether the evidence showed that the Appellees were paid nothing for a certain number of hours in excess of (40) hours. The Court also explained that some minimum wage damages were sought for some of the wages that were completely unpaid.  Trial Transcripts, Vol. 6, P101-102.  As to the overtime, (deducting vacations days) Appellee Feliciano during closing statements sought $33,750; in all he sought $34,568.80 factoring in unpaid minimum wages.  Trial Transcripts, Vol. 6, P25-26.  Based on (4) weeks of work, Appellee Milan requested $1,785 during closing.  Trial Transcripts, Vol. 6, P31.  [R, DE 236].  With respect to those figures, a review of the record in context shows Appellees' counsel provided a detailed explanation of why those damage amounts were sought. As indicated by [DE 193], the jury awarded Feliciano $20,849.38 and Milan $1,312.50.  Clearly the jury was generously fair to the Appellants in awarding less than was requested, particularly in light of the fact that

Appellants failed under *Anderson v. Mt. Clemmons Pottery, supra* to maintain the required time records.

Consequently, the jury was required to piece together the award based primarily on testimony from various witnesses over several days.   The district court explained to the jury that it was Appellants' burden to maintain time records, how the burden shifts and that damages claimed can be "approximate".  Trial Transcripts, Vol. 6, P102-103.    [R, DE 236].  The district also explained in-depth that work is compensable insofar that it is performed for the benefit of the employer, and the jury was apprised regarding bona fide meals and breaks. Trial Transcripts, Vol. 6, P103-104 et seq.   Leiva admitted the installers were not paid time and one-half overtime pay, and Leiva knew about overtime pay.  Trial Transcripts, Vol. 5, P76-77. The jury had significant justification to find against Appellants in this matter and to award damages to Appellees.

CONCLUSION:

For the foregoing reasons this Court should not reverse and should not enter judgment in favor of Appellants on any of the points raised.  Moreover, a new trial should not be granted.  The Court should reject all of the alleged grounds for appeal raised by the Appellants.  Appellants Heidelberger and McCarroll were properly found individually liable as FLSA employers, the

34

district court's final judgment should not be altered, the fluctuating workweek was correctly rejected, Appellants' in *pari delicto* arguments are without merit, the district court correctly allowed the jury to make the decision as to who it believed regarding Appellants' prejudicial fabrication arguments, and sufficient evidence is set forth in the record upon which the jury reasonably based its damages award.

Respectfully Submitted,

J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF-APPELLEES
300 71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
Tel.: (305) 865-6766
Fax: (305) 865-7167

By:_____
     K. David Kelly, Esquire
     Florida Bar No.: 0123870

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy hereof has been furnished by U.S. Mail on this ____ day of _____, 20__ to:

CHRIS KLEPPIN, ESQ.
GLASSER, BORETH & KLEPPIN
8751 W. BROWARD BLVD.
STE. 105
PLANTATION, FL 33324
FAX: 954.4747405

EDWARD LEIVA, PRO SE
7715 SOUTHAMPTON TERRACE
UNIT 213
TAMARAC, FL 33321

ALL COUNSEL OF RECORD
BURR & SMITH
442 KENNEDY BLVD., STE. 300
TAMPA, FL 33606

By:_____
K. David Kelly, Esquire
Florida Bar No.: 0123870

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that 14 point Times New Roman font was used throughout this Brief and that 7,551 words are extant herein.


J. H. ZIDELL, P.A.
ATTORNEYS FOR PLAINTIFF-APPELLEES
300 71ST STREET, SUITE 605
MIAMI BEACH, FLORIDA 33141
Tel.: (305) 865-6766
Fax: (305) 865-7167

By:_____
K. David Kelly, Esquire
Florida Bar No.: 0123870