CASE NO.:  11-15743

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

REINALDO RAMON LAMONICA, *et al.*,

Plaintiffs/Appellees,

vs.

SAFE HURRICANE SHUTTERS, INC., *et al.*,

Defendants/Appellants.

**APPELLANTS' PETITION FOR REHEARING
AND REHEARING *EN BANC***

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

DC DKT NO. 07-61295-CIV-COHN

CHRIS KLEPPIN, ESQ.
Glasser & Kleppin, P.A.
8751 W. Broward Blvd
Suite 105
Plantation, FL 33324
Telephone:  (954) 424-1933
Facsimile:   (954) 474-7405

Counsel for Appellants

*Lamonica, et al. v. Safe Hurricane Shutters, Inc.*, Case No. 11-15743

## CERTIFICATE OF INTERESTED PERSONS AND
## PUBLIC DISCLOSURE STATEMENT

1.    Safe Hurricane Shutters, Inc., Appellant

2.    Steve Heidelberger, Appellant

3.    Francis McCarroll, Appellant

4.    Edward Leiva, Pro Se, Appellant

5.    Chris Kleppin, counsel for Appellants

6.    Lloyd S. Glasser, counsel for Appellants

7.    The law firm of Glasser & Kleppin, counsel for Appellants

8.    Augustin Milan, Appellee

9.    Mario Feliciano, Appellee

10.   Jamie H. Zidell, Esq., counsel for Appellees

11.   Karl David Kelly, Esq., counsel for Appellees

12.   Sam Jones Smith, Esq., counsel for Appellees

13.   Marguerite Maria Longoria, Esq., counsel for Appellees

14.   Honorable James I. Cohn

15.   Honorable Jose A. Gonzalez

## STATEMENTS OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decision(s) of the Supreme Court of the United States and the precedents of this Circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this Court (for reasons expressed in this Brief): *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1983) (holding that for individual liability under the Fair Labor Standards Act the individual must either be involved in the day-to-day operation or have direct responsibility for the supervision of the employee suing); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) (holding same); *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) (holding that when hours fluctuate and there is an understanding that the employee will receive the same pay, any overtime owed is calculated by dividing the hours worked into the pay and an additional half-time (not time and one-half) is owed under the FLSA for the overtime) ; 29 C.F.R. § 778.114 (codifying *Missel*); *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) (disallowing an illegal alien from recovering under the NLRA); *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145 (11th Cir. 2006) (barring a plaintiff's claim under RICO because of the doctrine of *in pari delicto*).

The panel decision conflicts with binding Eleventh Circuit precedent and Supreme Court precedent, and the *en banc* Court should hear the matter, because the panel decision holds that two minority-owner directors (McCarroll and Heidelberger)

one of whom (Heidelberger) was rarely present and one who was present for a little less than half of the time (McCarroll), can be held liable under the FLSA individually, even though they did not have day-to-day operational control (they neither had day-to-day control nor could they have assumed day-to-day control if they wanted) and they had no responsibility for the supervision of the Plaintiffs (Plaintiff Milan never even met them and did not recognize them at trial), and the individuals did not even know how to perform the Plaintiffs' jobs and could not speak with Plaintiff Milan because he does not speak English and the individual Defendants do not speak Spanish, and the Plaintiffs admitted that other people supervised them. To hold the individuals liable, the Panel improperly based its decision on other factors, such as that they visited job sites occasionally and appeared to look at the work, met with the installers near the business's end to discuss whether they would be paid, and one individual loaned $20,000 to the business part of which apparently satisfied payroll obligations. The dissenting opinion of Judge Pryor makes clear that he is of the belief that the Panel opinion is contrary to *Patel* and *Alvarez Perez*, as the Panel opinion did not apply those decisions, but rather replaced them with a new standard for liability.

Concerning the fluctuating workweek method, significant evidence was presented at trial that the Plaintiffs were paid the same weekly pay no matter how many hours that they worked, and their hours varied week to week, and that this was the understanding both Plaintiffs had, which requires that the jury be instructed as to

how to calculate overtime in such a situation; namely, pursuant to Missel and 29 C.F.R. § 778.114, any overtime owed is calculated by dividing the hours worked into the pay and an additional half-time (not time and one-half) is owed under the FLSA for the overtime. The jury was not instructed that it could so calculate the overtime, but was only instructed that the overtime could be calculated by dividing the weekly pay into 40 (some evidence was produced at trial that the pay was intended to compensate for only the first 40 hours, but other evidence was introduced that it was intended to compensate for all hours worked), and then overtime at a time and one-half rate should be awarded for any hours that the jury found the Plaintiffs worked over 40 in a week. Therefore, as Judge Pryor's dissenting opinion makes clear, the jury could not possibly come up with a determination to 1) divide the number of hours worked into the pay and 2) to award only half time, when the jury was only instructed to divide the pay into 40 and never told anything at all about awarding merely half-time instead of time and one-half.

Finally, concerning the *in pari delicto* doctrine, the Panel found that illegal aliens who obtain work through the use of fraudulent social security documents and multiple social security numbers and who fail to pay taxes on their earnings can sue for overtime, because Plaintiffs did not participate in the company's decision not to pay them overtime, but the record evidence was that the Plaintiffs did agree to work overtime and only be compensated via the salary. Further, the Panel suggests that the doctrine cannot apply to a claim under the FLSA, because the FLSA does not

state in the statutory text that it can apply, but prior panel opinions held that it pertains to RICO claims, and RICO does not state in its statutory text that the doctrine may apply.

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance, namely, whether the standard for individual liability under the Fair Labor Standards Act should be made much more broader than current panel decisions hold, whether a defendant in a FLSA case can be denied the ability to invoked the fluctuating workweek method of calculating damages even though evidence demonstrates its applicability, and whether an illegal aliens who lied about their status and submitted false social security information to obtain employment and failed to pay income taxes on the wages received from the employer and agreed to work overtime without receiving overtime pay can thereafter sue the employer for allege failure to pay overtime.

Chris Kleppin, Esq.

**ATTORNEY OF RECORD FOR APPELLANTS**

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

This Brief on the Merits has been prepared using 14.0 Times New Roman print.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND PUBLIC DISCLOSURE STATEMENT ........................................................ C-1

STATEMENTS OF COUNSEL ...................................................................... i

CERTIFICATE OF TYPE SIZE AND STYLE ................................................ v

TABLE OF CONTENTS ................................................................................ v

TABLE OF AUTHORITIES ........................................................................ vii

ISSUES PRESENTED .................................................................................... 1

STATEMENT OF THE CASE ......................................................................... 1

A.    COURSE OF THE PROCEEDINGS – STATEMENT OF FACTS ........ 1

ARGUMENT ................................................................................................ 11

I.    Judge Pryor's Dissent Accurately States the Law as to Individual Liability under the FLSA, and the Panel Decision, Which Is Published, Should Be Vacated and Reheard, Because it Is Directly Contrary to *Patel* and *Alvarez Perez*, as It Ultimately Holds That Day-to-Day Operational Control or Supervision Over the Plaintiffs Is Not Required to Find Individual Liability ........................................................ 11

II.    Judge Pryor's Dissent Accurately States that It Was Reversible Error for the Jury Not to Have Been Instructed as to the Fluctuating Workweek Method of Calculating Half-Time Pay ........................................................................ 13

III.    The Panel's Decision, Allowing Illegal Aliens to Come Into Court to Sue for Alleged Overtime that Was Not Paid, when Those Illegal Aliens Provided False Social Security Documents and Failed to Pay Income Taxes on Their Earnings, Is

Contrary To a Supreme Court Decision (*Hoffman*) that Disallowed an Illegal Alien from Recovering under the FLSA's Sister Statute (the NLRA) and Contrary to a Decision of this Court (*Edwards*) that the *in pari delicto* Doctrine Bars Plaintiffs Seeking a Court to Enforce Illegality ........................................................................ 14

CERTIFICATE OF SERVICE.................................................................................. 16

# TABLE OF AUTHORITIES

Cases

*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*,

     515 F.3d 1150 (11th Cir. 2008)...............................................................I,11

*Hoffman Plastic Compounds, Inc. v. NLRB*,

     535 U.S. 137 (2002)...................................................................................i

*Jin-Ming Lin v. Chinatown Restaurant Corp.*,

     771 F. Supp. 2d 185 (D. Mass. 2011) ................................................. 15

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*,

     437 F.3d 1145 (11th Cir. 2006).................................................................i

*Overnight Motor Transp. Co. v. Missel*,

     316 U.S. 572 (1942) ............................................................................I,13

*Patel v. Wargo*,

     803 F.2d 632 (11th Cir. 1983).............................................................I,11

*Renteria v. Italia Foods, Inc.*,

     2003 WL 21995190 (N.D. Ill) .............................................................. 15

*Ulin v. Lovell's Antique Gallery*,

     2010 WL 3768012 (N.D. Cal)............................................................... 15

## ISSUES PRESENTED

### I.

Judge Pryor's Dissent Accurately States the Law as to Individual Liability under the FLSA, and the Panel Decision, Which Is Published, Should Be Vacated and Reheard, Because it Is Directly Contrary to *Patel* and *Alvarez Perez*, as It Ultimately Holds That Day-to-Day Operational Control or Supervision Over the Plaintiffs Is Not Required to Find Individual Liability.

### II.

Judge Pryor's Dissent Accurately States that It Was Reversible Error for the Jury Not to Have Been Instructed as to the Fluctuating Workweek Method of Calculating Half-Time Pay.

### III.

The Panel's Decision, Allowing Illegal Aliens to Come Into Court to Sue for Alleged Overtime that Was Not Paid, when Those Illegal Aliens Provided False Social Security Documents and Failed to Pay Income Taxes on Their Earnings, Is Contrary To a Supreme Court Decision (*Hoffman*) that Disallowed an Illegal Alien from Recovering under the FLSA's Sister Statute (the NLRA) and Contrary to a Decision of this Court (*Edwards*) that the *in pari delicto* Doctrine Bars Plaintiffs Seeking a Court to Enforce Illegality.

## STATEMENT OF THE CASE

### A.    COURSE OF PROCEEDINGS – STATEMENT OF FACTS & CASE

Plaintiffs filed suit under the Fair Labor Standards Act (eventually there were nine (9) Plaintiffs), and the case went to a jury trial with two (2) of the Plaintiffs, where those two Plaintiffs partially recovered (Milan received 32% and Feliciano received 40% of what they sought). [D.E.257at16].

At trial, the following facts were adduced; Defendant Leiva operated the business day-to-day and ultimately supervised the Plaintiffs and all installers, and all

witnesses agreed to that:  Neither Heidelberger nor McCarroll are officers of SHS, but rather are only minority shareholders at the director level.  [D.E.212at43,44-45,106].  They had 22% ownership interests in the company.  *Id.*  They did not have day-to-day operational control over the business, and they made no employment decisions at all (concerning laborers like the Plaintiffs), and no decisions whatsoever with respect to the setting of pay.  [D.E.212at85,88-92,95].

The agreement that McCarroll, Heidelberger, and Leiva had was that because Heidelberger and McCarroll lived out of state (Colorado and New York respectively), they were going to provide solely financial support to the company, and Leiva was going to run it day-to-day.  [D.E.212at126-27].  Consequently, Heidelberger was not involved in hiring or firing *decisions*.  *Id.* at 108,109.

Before the business started in May, 2006, Heidelberger came to Florida from his home in Colorado to have an initial meeting with Leiva and others in both January and March,2006.  *Id.* at 112-13,114.  Leiva introduced his department heads to Heidelberger at those meetings who Leiva had hired.  *Id.* at 113,125,131, 132,133-34. After the business began to be operated, Heidelberger performed a cost analysis and figured out the company was losing money because it was not charging enough for its services, and he told Leiva about this, but Leiva refused to the suggestion (he did not have to obey the individual Defendants).  *Id.* at 115-16,137-38.  Heidelberger did not involve himself in the operations of the company, or sub-departments of the company, did not hire or fire anyone, and was not involved in personnel decisions of

any kind, nor was he involved in human resources decisions, or pay decisions. *Id.* at 134-35. Heidelberger never set any corporate policies for the company. *Id.* He would do whatever Leiva would tell him to do when he visited the company. *Id.* at 128. Heidelberger was not involved in the day-to-day operation of the business. *Id.* at 128,147. Heidelberger was not even interested in knowing what was going on day-to-day, because he was just an investor. *Id.* He did not supervise any employees, and was not responsible for the hiring and firing of any employees. *Id.* at 128-29. Heidelberger did not set any wages or salaries for any employees at Safe Hurricane Shutters, nor was he even remotely involved in any such decisions. *Id.* at 129.

Heidelberger does not know how to install the shutters. *Id.* at 129-30. Thus, he could not and did not supervise the installers. *Id.* at 140. He never made any employment decisions concerning the Plaintiffs in this case or any installers. *Id.* at 141. He was not involved in pay decisions concerning installers from a policy perspective. *Id.* at 142.

McCarroll was not an officer, but rather was only a minority shareholder at the director level. [D.E.212at43,44-45,106]. McCarroll made no employment decisions on his own whatsoever, but was told by Leiva to inform a couple of employees that they were fired, and was present when Leiva fired two other employees in Spanish. [D.E.212 at 46-47]. McCarroll signed payroll checks once, because the controller was on vacation. *Id.* at 47-48,77-78.

McCarroll characterized himself as being present approximately 40% of the time or less, because he lived in New York. *Id.* at 54. To the contrary, Ed Leiva was at the business every day running it. *Id.* McCarroll never had any input concerning salaries employees were paid. *Id.* Leiva ran the show. *Id.* at 55. One time Plaintiff Feliciano asked McCarroll if he could get a raise, and McCarroll told Leiva about the request, and Leiva agreed to the raise. *Id.* at 56. Heidelberger told McCarroll that the company should raise its prices, and Heidelberger than told this to Leiva who disregarded Heidelberger's request. *Id.* at 60-61. The minority ownership that McCarroll had did not give him the authority to tell Leiva or anyone else what to do; Leiva was the boss, and it was his company to run. *Id.* at 81-83.

McCarroll could not set any corporate policies, and had no supervisory authority over Leiva. *Id.* at 84. McCarroll worked with the salesmen when he would come down. *Id.* He never supervised any employees, never supervised the Plaintiffs, and was never involved in evaluating the Plaintiffs' work. *Id.* at 85, 88-89. McCarroll could not have supervised or evaluated the Plaintiffs' work, because he does not know how—he cannot install shutters himself. *Id.* at 86, 88-89. McCarroll has never even seen Plaintiff Milan before in his life. *Id.* at 86. McCarroll never worked with the Plaintiffs on installations. *Id.* at 88. McCarroll never made any employment decisions concerning the Plaintiffs. *Id.* at 90. McCarroll never made any employment decisions concerning any installers. *Id.* at 91. McCarroll made no determinations concerning what or how the Plaintiffs were to be paid. *Id.* at 91, 92.

McCarroll had no involvement concerning what hours installers would work or whose crew they were to work on. *Id.* at 92. McCarroll did not have operational control, but Leiva did. *Id.* at 92,93. McCarroll had no authority to fire an installer; he was not in charge of maintaining employee records; he had no involvement in maintaining any business records; he never gave the department heads any instructions on how to run their various departments, and he never suggested to Leiva how he should perform his business day-to-day. *Id.* at 96. No overtime issues were discussed in the company. *Id.*

Yerko Aguirre testified that he was the manager of the installers. [D.E.212 at 121]. Aguirre testified that Leiva hired him, because Leiva was opening up a company in South Florida to install hurricane shutters. [D.E.210 at 134]. He knew Leiva to be an honest man who paid fairly, and thus accepted the job. *Id.* His pay was to be $900.00 per week. *Id.* at 135. Leiva never mentioned that he had any partners, and was the person who put the crews and teams together. *Id.* Leiva hired all of the installers. *Id. Aguirre readily admitted that he initially sued the corporate Defendant and Leiva, because Leiva ran the business day-to-day. Id.* at 137. Aguirre acknowledged that McCarroll was not there day-to-day. *Id.* He said that McCarroll "supervised everything", but then clarified that he would speak to Leiva who was the head of everything, and that McCarroll was simply there at the workplace some of the time. *Id.* at 137-38. *Aguirre admitted that McCarroll was not there enough and involved enough for him to be sued originally. Id.* at 138-39. Aguirre admitted that

5

hanging hurricane shutters and he does not know what Heidelberger did when Heidelberger was in the shop. [D.E.211at55,56-57]. Ibacache cannot really say what McCarroll did other than he kept track of jobs that were being performed, would visit the job sites, and once a scaffold fell and he asked the workers how it happened. *Id.* at 17. Heidel might talk to customers, but he has no idea about what. *Id.* at 74-75.

Ibacache said that he cannot say Heidelberger did anything on a regular basis much less exercise operational control because he was hardly ever there, and when Heidelberg was, he hardly ever saw him, but he does think that Heidelberger knew what was going on in the company. *Id.* at 60,61. Concerning McCarroll, Ibacache testified that he was at the company less than half the time. *Id.* at 62. Ibacache does not know who wrote the work orders that he was given. *Id.* at 74.

Plaintiff Feliciano testified about McCarroll and Heidelberger. Feliciano was only hired in August, 2006, so he cannot testify about what occurred before that period of time. Concerning McCarroll, Feliciano *thought* that McCarroll was making sure the crew was following the time schedule for the completion of the job concerning the Point of Americas project, which project occurred for two months; McCarroll might have gone to the project eight or so times. [D.E.213 at 31-32]. Feliciano did not meet Heidelberger until September,2006. *Id.* at 37. Feliciano thought he saw Heidelberger approximately once per month, and when he was here he would spend two days here, but then changed his testimony and admitted that he saw him only in September, October, December, and summer of 2007. *Id.* at 37-39.

Feliciano does not recall Heidelberger instructing him to do anything. *Id.* at 39. Feliciano claims that Heidelberger had one discussion with him concerning his pay; namely, that when the company fell behind on making payroll in July, 2007, Heidelberger assured him that he would make sure that Feliciano would get paid, but Feliciano claims he did not get paid. *Id.* at 41-44.

Felciano said that the vast majority of the time that he received work orders he received them from Leiva, and McCarroll gave him some. *Id.* at 67. Work orders are just pieces of paper that give a brief description of the work that needs to be done for the day by the crew. *Id.* at 81,85-86. Feliciano admitted that by giving out the work orders on occasion it was not as if McCarroll was giving him day-to-day directions on how to perform his job because Feliciano admitted that he knew how to do that, particularly since he knows more than a hundred times more than McCarroll and ten thousand times more than Heidelberger how to install shutters. *Id.* at 86. Feliciano admitted that neither Heidelberger nor McCarroll know how to install shutters. *Id.* at 87-88. Leiva hired Feliciano. *Id.* at 69. *Importantly, Feliciano admitted that he was not supervised by McCarroll or Heidelberger, because he worked off of site and was not supervised by anyone. Id.* at 71. *See also id.* at 71-72 (testifying that as the crew leader he ran the crew and was not supervised by anyone day in and day out). *At another occasion in his testimony, Feliciano said that Mark and Mike Morris were his supervisors. Id.* at 125. Importantly, *Feliciano admitted that Heidelberger did not exercise day-to-day operational control. Id.* at 135.

Plaintiff Milan started at the end of July, 2007, as an installer. *Id.* at 142. *Milan never saw McCarroll or Heidelberger or communicated with them. Id.* at 145. *Leiva hired Milan, and Leiva was known as the head of the installers. Id.* at 157. *It was clear to Milan that Leiva was running the company day-to-day. Id.* at 158. *Milan only spoke to Leiva about pay issues, work assignments, or if there were any problems on the job. Id.* at 159. Leiva hired both Plaintiffs and determined what their pay would be with them. [D.E.213at144-45,159,58,69,48,57,63].

Keith Lares a former installer and then controller testified that Heidelberger was hardly ever there, and did not exercise day-to-day operational control and neither did McCarroll. [D.E.214 at 40-42]. Lares said Leiva had operational day-to-day control. *Id.* at 42. Leiva testified that neither McCarroll nor Heidelberger could be considered employers of the Plaintiffs. *Id.* at 76.

Plaintiff Feliciano committed widespread federal income tax fraud by, *inter alia*, failing to report his earnings from the corporate Defendant on either his 2006 or 2007 tax returns, failing to report cash payments, and by listing false write-offs. [D.E.213 at 48-51, 60]. Feliciano did this even though he knew that he was signing his tax return under penalty of perjury. *Id.* at 80-81.

Milan failed to declare his earnings with the corporate Defendant on his 2007 tax return. *Id.* at 152-53. Milan used false social security numbers on his tax returns. *Id.* at 156 (discussing the multiple social security numbers that he was using). While Milan denied that Leiva asked him for a social security number (or had any

9

conversation with him about tax documents) when he was hired and that he presented a false social security number, he was impeached with this deposition testimony where he admitted he spoke to Leiva about filling out an application for employment and about "tax documents". *Id.* at 158-59. Milan is an illegal alien. [D.E.63].

The agreement was that the installers were to be paid by the week, regardless of how many hours that they worked.    [D.E.212at52,56].    Plaintiff Feliciano admitted that he was paid $1,000 per week. [D.E.213at48]. Feliciano's pay agreement was reduced to writing, and when it was, it was described as being a weekly salary. *Id.* at 58. Feliciano admitted that his hours varied greatly, but that he would always receive the same weekly salary. *Id.* at 62. He cashed the paychecks that he received. *Id.* at 63. He testified as follows:

Q:   . . . You had to have a clear and mutual understanding that no matter how many hours I work, that's what my pay's going to be because it happened for over a year, correct?

A:   Yes.

[D.E.213 at 63]. Plaintiff Milan, too, testified that he was paid the same salary ($700 per week) no matter how many hours he worked, and that his hours varied, too. [D.E.214 at 11-12].   The controller Brad Bungo testified that the clear and mutual understanding existed. *Id.* at 57-58.

Concerning a new trial on this issue, the Defendants objected at the charge conference to the Court's taking the fluctuating workweek method of calculating damages away from the jury, because that only left the jury with one way to calculate

damages, assume that the salary compensated only the first 40 hours and all other hours worked over 40 were completely uncompensated. [D.E.214 at 130-32].

## ARGUMENT

I.    **Judge Pryor's Dissent Accurately States the Law as to Individual Liability under the FLSA, and the Panel Decision, Which Is Published, Should Be Vacated and Reheard, Because it Is Directly Contrary to *Patel* and *Alvarez Perez*, as It Ultimately Holds That Day-to-Day Operational Control or Supervision Over the Plaintiffs Is Not Required to Find Individual Liability.**

Previous panel decisions concerning individual liability under the FLSA are clear regarding the applicable test—the individual must either be involved in the day-to-day operation or have direct responsibility for the supervision of the employee suing. *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1983); *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2008) (holding same). The Panel decision states that Heidelberger and McCarroll "owned a substantial percentage of the corporation" (Op.at21), but they did not, as the two of them combined did not even own half of the company. The Panel states that "the jury may infer [day-to-day] control from the exercise of general supervisory powers or the exercise of control over other employees" (Op.at22), but no evidence exists from which such an inference can be drawn. What is more, concerning supervisory power, *Milan said he never saw either individual.* [D.E.213at145]. Thus, they cannot be liable, at least to Milan. Milan admitted *Leiva was known as the head of the installers and had operational control. Id.* at 157,158. *Feliciano testified that*

11

*neither individual supervised him. Id.* at 71-72,125. Thus, there is no evidence from which a jury could find that either individual had supervisory powers over the *Plaintiffs* to satisfy that prong of the test. This is acutely so, since neither individual Defendant knows how to install the hurricane shutters [D.E.213at86;D.E.212at86,88-89,129-30], and neither one could communicate with 95% of the installers because of language differences.

Concerning the exercise of day-to-day control prong, Feliciano *expressly admitted* that Heidelberger did not have operational control over the business. [D.E.213at135]. The above-stated facts do not suggest otherwise. There is otherwise no evidence that suggests either individual Defendant had day-to-day operational control. The Panel concluded that both visited job sites, and on one occasion they met with installers and told them their pay would be delayed, and Heidelberger loaned the business $20,000 once knowing some of the money may be used for payroll purposes. (Op.at23). These facts do not warrant a finding of individual liability. The Panel then in conclusory fashion finds that "McCarroll . . . had substantial supervisory powers in relation to installers", but provides no details, states that Heidelberger gave one loan, and on one occasion the individuals met with the installers and discussed when they would get paid, and concludes that this evidence satisfies the *Patel* and *Alvarez Perez* standard. (Op.at23). It does not, for either individual. The Panel states the "primary concern" is the putative "supervisor's role in causing the FLSA violation" (Op.at22&22-23), but here there is no evidence that

either individual had anything to do with FLSA compliance. These issues are critical because it could significantly damage business and commerce in this Circuit, if businesspeople know that if they are merely passive, minority investors they could be subject to being individually sued for wage issues of which they had no involvement in or power to do anything about.

**II. Judge Pryor's Dissent Accurately States that It Was Reversible Error for the Jury Not to Have Been Instructed as to the Fluctuating Workweek method of Calculating Half-Time Pay.**

If the Panel was not going to grant Rule 50 in Defendants' favor concerning the application of the fluctuating workweek method (it should have) at a minimum, it should have reversed and remanded for new trial the district court's failure to instruct the jury as to this method of calculating damages, and to not do so means the Panel decision conflicts with *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) (holding that when hours fluctuate and there is an understanding that the employee will receive the same pay, any overtime owed is calculated by dividing the hours worked into the pay and an additional half-time (not time and one-half) is owed under the FLSA for the overtime) and 29 C.F.R. § 778.114.

The Panel states that the jury could theoretically have calculated damages pursuant to the fluctuating workweek method with the instructions that were given (Op.at17), but as the dissent found, this is not so, because they were not given an example as to how to do it, much less specifically instructed, and thus they would not

possibly come up with the decision to divide the hours worked each week into the weekly pay on its own. Moreover, even if in theory the jury could have decided to divide the number of hours Plaintiffs actually worked into the weekly pay (rather than 40 hours as they were instructed to do), the jury could not possibly have awarded just an additional *half time* (like the law requires, because they were not instructed to do so), but assuredly would have awarded time and one-half (because they were only instructed to award time and one-half), which would not be consistent with the fluctuating workweek method of calculating damages. *The jury could not possibly have decided on its own, without a specific instruction, to award half-time.* The failure to instruct the jury on this method further prejudiced Defendants because they mentioned the method in opening statements and elicited facts that warranted such an instruction, and thus Defendants' credibility was lost with the jury when all along arguments were asserted that the Plaintiffs were greatly overstating their damages (and overstating other "evidence" because of greed), but in the end no instruction was given so the Defendants' position never got to the jury, and the jury was left with the impression that the Defendants accused the Plaintiffs of overstating their damages wrongly—the utilization of the fluctuating workweek method is important, because all else being equal, it will result in damages being reduced by two-thirds.

**III. The Panel's Decision, Allowing Illegal Aliens to Come Into Court to Sue for Alleged Overtime that Was Not Paid, when Those Illegal Aliens Provided False Social Security Documents and Failed to Pay Income Taxes on Their Earnings, Is Contrary To a Supreme Court Decision**

**(*Hoffman*) that Disallowed an Illegal Alien from Recovering under the FLSA's Sister Statute (the NLRA) and Contrary to a Decision of this Court (*Edwards*) that the *in pari delicto* Doctrine Bars Plaintiffs Seeking a Court to Enforce Illegality.**

The Panel held that the *in pari delicto* doctrine is not applicable because the Plaintiffs were not involved in the illegality before the Court—namely, FLSA violations. First, the doctrine should not be read so narrowly, because extremely serious illegality was presented at this trial, as discussed above in the facts, and Plaintiffs, if they satisfy the judgment, will certainly not pay taxes on it since they opposed it being reduced to a net amount and did not pay taxes on their non-overtime wages; thus, the Court is enabling to commit criminal activity. Second, the Plaintiffs were involved in the illegality, because they worked for significant periods of time (according to them) weekly overtime without being paid it, and their position was that the pay agreement was salary for the first 40 hours only, and no compensation for the hours over 40 at all [D.E.213at144-45,159,58,69,48,57,63], coupled with the fact that they claim they worked overtime every week, they knew they were violating the law every week, and were thus involved in the illegality. Finally, *Hoffman* should be read to bar an illegal alien who has committed fraud to obtain employment and committed intentional income tax evasion from recovering under the FLSA as other courts have found. *Jin-Ming Lin v. Chinatown Restaurant Corp.*, 771 F. Supp. 2d 185 (D. Mass. 2011); *Ulin v. Lovell's Antique Gallery*, 2010 WL 3768012 (N.D. Cal.); *Renteria v. Italia Foods, Inc.*, 2003 WL 21995190 (N.D. Ill.).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by first-class U.S. mail to J.H. Zidell, Esq., City National Bank Building, 300 71st Street, Suite #605, Miami Beach, Florida 33141, this 25th day of March, 2013.

Respectfully submitted,

Glasser & Kleppin, P.A.
Attorneys for Defendants/Appellants
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405

By:_____
　　　　Chris Kleppin
　　　　Fla. Bar No. 625485

# PANEL OPINION

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 11-15743

———————————

D.C. Docket No. 0:07-cv-61295-JIC

REINALDO RAMON LAMONICA,
AUGUSTIN MILAN,
ANGELES LAMONICA SOLER,
MARIO FELICIANO,
GUILLERMO ALBOREZ, et al.

Plaintiffs-Appellees,

versus

SAFE HURRICANE SHUTTERS, INC.,
a Florida corporation,
d.b.a. Advanced Hurricane Protection,
STEVE HEIDELBERGER,
FRANCIS MCCARROL,

Defendants-Appellants.

———————————

Appeal from the United States District Court
for the Southern District of Florida

———————————

(March 6, 2013)

Before BARKETT and PRYOR, Circuit Judges, and BATTEN,[*] District Judge.

BATTEN, District Judge:

This is an appeal from a judgment awarding unpaid wages and liquidated damages under the Fair Labor Standards Act ("FLSA"). Appellees challenge the judgment itself, as well as the district court's denial of their post-trial motions under Federal Rules of Civil Procedure 50(b) and 59(e). For the reasons that follow, we affirm.

## I. BACKGROUND

Mario Feliciano and Augustin Milan formerly installed hurricane shutters for Safe Hurricane Shutters, Inc. In relation to that employment, they brought this action along with seven of their former co-workers to recover unpaid overtime wages under the FLSA. In addition to the corporate defendant, they sued its president and CEO, Edward Leiva, and two of its directors, Steve Heidelberger and Francis McCarroll. After trial, the jury found in favor of Feliciano and Milan and against all of the defendants, awarding damages of $20,849.38 to Feliciano and $1,312.50 to Milan. The district court subsequently determined that Feliciano and Milan were entitled to liquidated damages in an amount equal to their actual

---

[*]Honorable Timothy C. Batten, Sr., United States District Court for the Northern District of Georgia, sitting by designation.

damages and entered final judgment in favor of Feliciano in the amount of $41,698.76 and in favor of Milan in the amount of $2,625.00.

After the judgment was entered, Safe Hurricane Shutters, Heidelberger, and McCarroll filed a renewed motion for judgment as a matter of law and alternative motion for new trial under Federal Rule of Civil Procedure 50(b). They also filed a motion to alter or amend the judgment under Rule 59(e). The district court denied both motions. Safe Hurricane Shutters, Heidelberger, and McCarroll now appeal the judgment, as well as the district court's order denying their post-trial motions.

## II. DISCUSSION

The issues raised in this appeal require the application of several different standards of review, each of which will be discussed in context below.

### A. In Pari Delicto

First, Appellants argue that the district court should have granted their motion for judgment as a matter of law based on the doctrine of in pari delicto, which states that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Official Comm. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152 (11th Cir. 2006) (quoting BLACK'S LAW DICTIONARY 794 (7th ed. 1999)). "We review a district court's ruling on a

3

Case: 11-15743    Date Filed: 03/06/2013    Page: 4 of 40

motion for judgment as a matter of law de novo." Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 723 (11th Cir. 2012).

Appellants argue that both Feliciano and Milan participated in the wrongdoing by failing to accurately report the income they earned from Safe Hurricane Shutters to the IRS. They further argue that Milan participated in the wrongdoing because he was an undocumented alien not authorized to work in the United States, and he applied to work for Safe Hurricane Shutters using a false Social Security number.[1]  As a result, Appellants contend that Feliciano and Milan should be barred from recovering under the FLSA.

We have previously held that undocumented aliens are "employees" who may recover unpaid wages under the FLSA.  Patel v. Quality Inn S., 846 F.2d 700, 706 (11th Cir. 1988).  Appellants argue that the Supreme Court effectively overruled Quality Inn in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137, 148–52 (2002).  However,

> [w]e are bound by the holdings of earlier panels unless and until they are clearly overruled by this court en banc or by the Supreme Court. While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court, the Supreme Court decision must be clearly on point.

---

[1] Milan's immigration status was not conclusively established at trial, but because we find it irrelevant to his ability to recover under the FLSA, we will assume that he was indeed an undocumented alien during the time he worked for Safe Hurricane Shutters.

Randall v. Scott, 610 F.3d 701, 707 (11th Cir. 2010) (internal citations and quotation marks omitted). For the reasons that follow, Hoffman is not clearly on point and therefore did not overrule Quality Inn.

In Hoffman, the Supreme Court held that the NLRB cannot award backpay to undocumented aliens who are terminated for union activity in violation of the National Labor Relations Act ("NLRA"). However, the Court did not disturb its prior holding that undocumented aliens "plainly come within the broad statutory definition of 'employee'" contained in the NLRA. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 892 (1984). Instead, the Court emphasized that it was merely limiting the remedies available to undocumented aliens under the NLRA. See Hoffman, 535 U.S. at 152 ("Lack of authority to award backpay does not mean that the employer gets off scot-free."). In Quality Inn, we found the statutory definitions of "employee" in the NLRA and FLSA to be analogous, and we drew upon Sure-Tan's analysis of the NLRA in concluding that undocumented aliens are also "employees" under the FLSA. 846 F.2d at 702–03. Hoffman does nothing to cast doubt on that portion of our holding.

Nor does Hoffman cast doubt on our holding that undocumented aliens may recover their unpaid wages under the FLSA. The NLRA, which was at issue in Hoffman, grants the NLRB "broad discretion to devise remedies that effectuate the policies of the Act, subject only to limited judicial review." Sure-Tan, 467 U.S. at

5

898–99. This limited judicial review includes the authority to reject the NLRB's chosen remedy where it "trenches upon a federal statute or policy outside the Board's competence to administer." Hoffman, 553 U.S. at 147. Hoffman was an exercise of that judicial authority; the Court rejected the NLRB's remedy on the ground that it trenched upon the policies underlying the Immigration Reform and Control Act of 1986 ("IRCA").

In contrast, no administrative body or court is vested with discretion to fashion an appropriate remedy under the FLSA. Instead, the Act unequivocally provides that any employer who violates its minimum wage or overtime provisions "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."[2] 29 U.S.C. § 216(b). Unlike the NLRA, there is nothing in the FLSA that would allow us to conclude that undocumented aliens, although protected by the Act, are nevertheless barred from recovering unpaid wages thereunder.

Moreover, Hoffman does not give us cause to reconsider whether the IRCA was intended to amend the FLSA by implication, removing undocumented aliens from its protection. Of course, Hoffman did not even go this far with respect to the

---

[2] The court has discretion not to award liquidated damages if it finds that the defendant acted in good faith. 29 U.S.C. § 260. However, unpaid wages must be awarded regardless of the employer's good faith.

6

NLRA; it merely concluded that in light of the policies underlying the IRCA, an award of backpay to an undocumented alien "lies beyond the bounds of the Board's remedial discretion." 535 U.S. at 149. Even so, to give full consideration to Appellants' arguments, we will determine whether Hoffman's reasoning undermines our reasoning in Quality Inn. In doing so, we reemphasize that "amendments by implication are disfavored. Only when Congress' intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one." Quality Inn, 846 F.2d at 704.

In Hoffman, the Court concluded that awarding backpay to undocumented aliens under the NLRA would be inconsistent with the IRCA, which "'forcefully' made combating the employment of illegal aliens central to '[t]he policy of immigration law.'" 535 U.S. at 147 (quoting INS v. Nat'l Ctr. for Immigrants' Rights, Inc., 502 U.S. 183, 194 & n.8 (1991)). The Court rejected the view that Congress would have made it a crime for an alien to obtain employment with false documents and "nonetheless intended to permit backpay where but for an employer's unfair labor practices, an alien-employee would have remained in the United States illegally, and continued to work illegally, all the while successfully evading apprehension by immigration authorities." Id. at 149. The Court reasoned that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations." Id. at 150.

In contrast, an FLSA plaintiff "is not attempting to recover back pay for

being unlawfully deprived of a job" that he could never have lawfully performed.

Quality Inn, 846 F.2d at 705. "Rather, he simply seeks to recover unpaid

minimum wages and overtime for work already performed." Id.

> In such circumstances, the immigration law violation has already
> occurred. The [award of unpaid wages] does not itself condone that
> violation or continue it. It merely ensures that the employer does not
> take advantage of the violation by availing himself of the benefit of
> undocumented workers' past labor without paying for it in accordance
> with minimum FLSA standards.

Madeira v. Affordable Hous. Found., Inc., 469 F.3d 219, 243 (2d Cir. 2006). Thus,

even after Hoffman, we maintain that "[b]y reducing the incentive to hire such

workers the FLSA's coverage of undocumented aliens helps discourage illegal

immigration and is thus fully consistent with the objectives of the IRCA." Quality

Inn, 846 F.2d at 704–05. In short, the IRCA does not express Congress's clear and

manifest intent to exclude undocumented aliens from the protection of the FLSA.

For the foregoing reasons, Hoffman is not clearly on point and we are bound

to follow Quality Inn. Consequently, Milan's ability to recover unpaid wages

under the FLSA does not depend on his immigration status. However, Appellants

argue that the in pari delicto doctrine still bars his recovery because in addition to

being an undocumented alien, he applied to work for Safe Hurricane Shutters using

a false Social Security number. They further argue that the in pari delicto doctrine

bars both Feliciano and Milan from recovering under the FLSA because they failed

to accurately report their income to the IRS.

The in pari delicto defense may be applied to bar recovery under a federal

statute only where (1) the plaintiff bears at least substantially equal responsibility

for the violations he seeks to redress, and (2) preclusion of the suit would not

substantially interfere with the statute's policy goals. See Bateman Eichler, Hill

Richards, Inc. v. Berner, 472 U.S. 299, 310–11 (1985); Edwards, 437 F.3d at

1154–55. "The first prong of this test captures the essential elements of the classic

in pari delicto doctrine." Pinter v. Dahl, 486 U.S. 622, 633 (1988). The second

"embodies the doctrine's traditional requirement that public policy implications be

carefully considered before the defense is allowed" and "ensures that the broad

judge-made law does not undermine the congressional policy favoring private suits

as an important mode of enforcing federal . . . statutes." Id. Because we conclude

that the first prong is not satisfied in this case, we need not determine whether the

in pari delicto doctrine is consistent with the policies underlying the FLSA, such

that it may ever be applied to bar recovery under that statute.

In order to satisfy the first prong of the Bateman Eichler test, "[t]he plaintiff

must be an active, voluntary participant in the unlawful activity that is the subject

of the suit." Id. at 636 (emphasis added). "Plaintiffs who are truly in pari delicto

are those who have themselves violated the law in cooperation with the defendant."

9

Id. (emphasis added) (quoting Perma Life Mufflers, Inc. v. Int'l Parts Corp., 392 U.S. 134, 153 (1968)).  In this case, neither Feliciano nor Milan cooperated with Appellants in violating the FLSA.

Appellants argue that Milan's recovery should be barred because he would not have been hired absent his use of a false Social Security number.  They further argue that both Feliciano's and Milan's recoveries should be barred because their tax violations are "connected with the matter in litigation."  However, both of these arguments misstate the test to be applied under Bateman Eichler.  Not just any causal relationship or topical connection will do.  "The plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit."  Id. at 636 (emphasis added).  Appellants cannot satisfy that test because Feliciano and Milan did not participate in Appellants' decision whether to pay them overtime wages in accordance with the FLSA.  Therefore, the district court was correct to deny Appellants' motion for judgment as a matter of law based on the in pari delicto doctrine.

### B.  Jury Instructions

Next, Appellants argue that two portions of the district court's jury instructions require a new trial.  First, Heidelberger and McCarroll contend that the district court gave erroneous instructions on the issue of their individual liability.

Second, all Appellants argue that the district court erred in failing to instruct the

jury on the fluctuating workweek method of calculating damages.

"We review jury instructions de novo to determine whether they misstate the

law or mislead the jury to the prejudice of the objecting party, but the district court

is given wide discretion as to the style and wording employed in the instructions."

Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1276 (11th Cir. 2008) (internal

citations omitted). "We review only for an abuse of discretion a district court's

refusal to give a requested jury instruction." Pensacola Motor Sales Inc. v. E.

Shore Toyota, LLC, 684 F.3d 1211, 1224 (11th Cir. 2012). "In refusing to give a

requested jury instruction, '[a]n abuse of discretion is committed only when (1) the

requested instruction correctly stated the law, (2) the instruction dealt with an issue

properly before the jury, and (3) the failure to give the instruction resulted in

prejudicial harm to the requesting party.'" Id. (quoting Burchfield v. CSX Transp.,

Inc., 636 F.3d 1330, 1333–34 (11th Cir. 2011)).

### 1. Individual Liability

The FLSA creates a private right of action against any "employer" who

violates its minimum-wage or overtime provisions. 29 U.S.C. § 216(b). The Act

defines the term "employer" broadly to include "both the employer for whom the

employee directly works as well as 'any person acting directly or indirectly in the

interests of an employer in relation to an employee.'" Josendis v. Wall to Wall

Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)). Based on this broad definition, we have joined the "overwhelming weight of authority" and held that "a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." Patel v. Wargo, 803 F.2d 632, 637–38 (11th Cir. 1986) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir. 1983)). In this appeal, we must determine whether corporate supervisors other than officers may be personally liable under the FLSA, and we must clarify the degree and type of operational control that will support individual liability.

Heidelberger and McCarroll argue that the district court's jury instructions on individual liability require a new trial for three reasons. First, they argue that the district court should have instructed the jury that personal liability under the FLSA is limited to officers. Second, they argue that the district court should have instructed the jury that "any control over an employee in determining individual liability is limited to control over the employee-plaintiff, or individuals in his same position." Third, they argue that the district court erred by instructing the jury that even occasional operational control can support individual liability.

12

Case: 11-15743    Date Filed: 03/06/2013    Page: 13 of 40

We will consider only the first issue (non-officer liability) in our review of

the district court's jury instructions.[3] The record does not reflect that Heidelberger

or McCarroll ever proposed an instruction that "any control over an employee in

determining individual liability is limited to control over the employee-plaintiff, or

individuals in his same position." Therefore, the district court did not abuse its

discretion in failing to give such an instruction. Also, the district court did not

actually instruct the jury that occasional control can support individual liability.[4]

Therefore, we need not consider whether such an instruction would have been

erroneous.

In arguing that only officers may be held personally liable under the FLSA,

Heidelberger and McCarroll rely on Wargo's holding that "a corporate officer with

operational control of a corporation's covered enterprise is an employer along with

the corporation, jointly and severally liable under the FLSA for unpaid wages." Id.

(quoting Agnew, 712 F.2d at 1511).  But while it recognized personal liability for

officers, Wargo did not purport to limit personal liability to officers, and the Act's

broad definition of "employer" does not admit of such a limitation.  As we have

---

[3] The other two issues will be considered below in the context of Appellants' challenges
to the sufficiency of the evidence.

[4] The district court removed the following sentence from the plaintiffs' proposed
instruction on individual liability: "Liability may also be found even if control is restricted or
exercised only occasionally as such does not diminish the significance of the existence of such
control."  Trial Tr. vol. 5, 138–39, Apr. 15, 2011.

previously stated, whether an individual fits that definition "does not depend on technical or isolated factors but rather on the circumstances of the whole activity." Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting Hodgson v. Griffin & Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir. 1973)) (internal quotation marks omitted).  In the typical case, a corporation's officers will exercise more operational control than its directors and therefore be more susceptible to personal liability.  However, usual corporate roles are not always observed, and some directors may assume more operational control than some officers.  Therefore, a supervisor's title does not in itself establish or preclude his or her liability under the FLSA, and the district court was correct in refusing to instruct the jury to the contrary.

### 2. Fluctuating Workweek Method

Appellants also take issue with the district court's jury instructions on the issue of damages.  The FLSA requires that employers compensate their employees for overtime hours "at a rate not less than one and one-half times the regular rate at which [they are] employed."  29 U.S.C. § 207(a)(1).  If the employer fails to do so, it will be liable to the employees for their "unpaid overtime compensation." Id. § 216(b).  The Act does not define the employee's "regular rate."  However, in the case of an employee who is paid a constant weekly salary for fluctuating hours, the Supreme Court has found it acceptable to calculate the regular rate by dividing that

14

weekly salary by the number of hours actually worked. Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 (1942). This has come to be known as the "fluctuating workweek method."

After Missel was decided, the Department of Labor ("DOL") promulgated 29 C.F.R. § 778.114, an interpretive rule setting forth the fluctuating workweek method. Subsection (a) of the rule explains that where the fluctuating workweek method is used to calculate the employee's regular rate of pay, "[p]ayment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement."

The DOL's interpretive rule "sets forth one way in which an employer may lawfully compensate a nonexempt employee for fluctuating work hours; it is not a remedial measure that specifies how damages are to be calculated when a court finds that an employer has breached its statutory obligations." Urnikis-Negro v. Am. Family Prop. Servs., 616 F.3d 665, 666 (7th Cir. 2010). However, under Missel, the fluctuating workweek method may be used to calculate an employee's regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA. Id. Appellants contend that the district court erred in failing to instruct the jury on the fluctuating workweek method for calculating damages in this case.

15

As an initial matter, we reject Feliciano and Milan's argument that Appellants waived the application of the fluctuating workweek method by failing to plead it as an affirmative defense. The fluctuating workweek method is merely "one method of complying with the overtime payment requirements of 29 U.S.C. § 207(a)(1). It is not an exemption to it." Samson v. Apollo Res., Inc., 242 F.3d 629, 636 (5th Cir. 2001). Consequently, the fluctuating workweek method is not an affirmative defense; rather, "the employee bears the burden of proving that the employer failed to properly administer [it]." Id. As a result, we will consider Appellants' arguments on this issue.

However, the fluctuating workweek method is not the only or even the default method for calculating damages when an employee is paid a weekly salary. In fact, it is conceptually subsumed within the broader rule that "[i]f the employee is employed solely on a weekly salary basis, the regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). We have previously deferred to this DOL interpretation of an employee's "regular rate" of pay under the FLSA. Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1268 n.5 (11th Cir. 2008). Consequently, "where the employee is paid solely on a weekly salary basis, the number of hours the

16

employee's pay is intended to compensate—not necessarily the number of hours he actually works—is the divisor." Id. at 1269.

The district court properly instructed the jury to calculate Appellees' regular rates of pay using the number of hours their salaries were intended to compensate. Based on this instruction, the jury could have determined that Appellees' salaries were intended to compensate all hours worked and calculated their regular rates of pay accordingly. The district court further instructed the jury that "[t]he measure of damages is the difference between what the employee should have been paid under the act and the amounts that you find were actually paid." Thus, if the jury determined that Appellees' salaries were intended to compensate all hours worked, it should have determined that they were already partially compensated for their overtime hours at their regular rate of pay and merely awarded an overtime premium at half that rate. This is, in effect, an application of the fluctuating workweek method.

Because the jury instructions actually given allowed the jury to effectively apply the fluctuating workweek method, we cannot conclude that Appellants were prejudiced by the refusal to give more specific instructions. See Goulah v. Ford Motor Co., 118 F.3d 1478, 1485 (11th Cir. 1997) ("The district court's refusal to give requested instructions is not error if the substance of the proposed instruction was covered by another instruction, which was given."). While we would not

adopt the district court's instructions as a model, and more specificity is preferable,

we hold that the district court did not abuse its discretion in refusing to give

Appellants' proposed instruction on the fluctuating workweek method.

### C. Sufficiency of the Evidence

Next, Appellants argue that the district court should have granted their

renewed motion for judgment as a matter of law or alternative motion for a new

trial based on insufficiency of the evidence, and they raise three evidentiary issues.

First, Heidelberger and McCarroll argue that the evidence was insufficient to hold

them individually liable under the FLSA. Second, all Appellants argue that the

evidence was insufficient for the jury to refuse to apply the fluctuating workweek

method. Third, all Appellants argue that there was insufficient evidence of

Feliciano's and Milan's overtime hours to support the jury's verdict.

"We review de novo the denial of a motion for judgment as a matter of law,

which necessarily means that we apply the same standard as the district court."

Pensacola Motor Sales, 684 F.3d at 1226. Judgment as a matter of law is

appropriate where "a reasonable jury would not have a legally sufficient

evidentiary basis to find" for the nonmoving party on a controlling issue. FED R.

CIV. P. 50(a)(1). Consequently, "[w]e will reverse only if the facts and inferences

point overwhelmingly in favor of [the moving] party, such that reasonable people

could not arrive at a contrary verdict." Ash v. Tyson Foods, Inc., 664 F.3d 883, 892 (11th Cir. 2011) (quoting Goldsmith, 513 F.3d at 1275).

In conducting our review, "[w]e do not make credibility determinations or weigh the evidence." Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713, 724 (11th Cir. 2012). Instead, "we consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." Pensacola Motor Sales, 684 F.3d at 1226. We will "give credence to . . . that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that [it] comes from disinterested witnesses"; however, we will "disregard all evidence favorable to the moving party that the jury is not required to believe." Mee Indus. v. Dow Chem. Co., 608 F.3d 1202, 1211 (11th Cir. 2010) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000)).

"We review a district court's denial of a motion for a new trial for an abuse of discretion." St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1200 n.16 (11th Cir. 2009). "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." Id. (quoting Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001)).

### 1.    Individual Liability

Heidelberger and McCarroll argue that the district court should have granted their Rule 50 motion on the issue of individual liability for two reasons.  First, they contend that they cannot be held personally liable because they were not officers of Safe Hurricane Shutters but merely "minority shareholders at the director level."[5] As discussed above, this argument is meritless because non-officers may be held personally liable under the FLSA.  Second, they argue that they did not exercise sufficient operational control to be held personally liable under the FLSA.  In resolving this latter issue, we must clarify the degree and type of operational control that will support individual liability under the FLSA.

We recognize along with the First Circuit that "individuals ordinarily are shielded from personal liability when they do business in a corporate form, and that it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA." Baystate Alt. Staffing, Inc. v. Herman, 163 F.3d 668, 677 (1st Cir. 1998).  However, the FLSA contemplates at least some individual liability, and it is consistent with Congress's intent to impose liability upon those who "control[] a corporation's financial affairs and can cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." Id.

---

[5] There was some evidence that McCarroll held himself out as the vice-president of Safe Hurricane Shutters, but for purposes of this appeal, we will assume that he was merely a shareholder and a director.

at 678. A supervisor's ownership interest in the corporation and control over the corporation's day-to-day functions are relevant to this inquiry because they are indicative of the supervisor's role in causing the violation. *Id.*

In this case, Heidelberger and McCarroll testified that they each owned about 22.5 percent of Safe Hurricane Shutters and that their co-defendant, Edward Leiva, owned the same amount. McCarroll testified that the remaining shares were owned by three individuals, each of whom owned smaller percentages than Leiva, Heidelberger, and himself. The fact that Heidelberger and McCarroll each owned a substantial percentage of the corporation suggests that they had control over its financial affairs and supports a finding of personal liability. However, Heidelberger and McCarroll argue that they were in fact absentee owners who did not exercise such control.

Our prior decisions addressing operational control have held that in order to qualify as an employer under the FLSA, a supervisor "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." Alvarez Perez, 515 F.3d at 1160 (quoting Wargo, 803 F.2d at 638). Heidelberger and McCarroll rely on this language to argue that the law is more favorable to their side than it really is.

First, they contend that "any control over an employee in determining individual liability is limited to control over the employee-plaintiff, or individuals

in his same position." We agree that relevant control for purposes of individual liability is control in relation to the employee-plaintiff. However, such control need not be proved directly. For example, the jury may infer such control from the exercise of general supervisory powers or the exercise of control over other employees. Thus, Heidelberger and McCarroll's argument represents an incomplete statement of the law.

Next, Heidelberger and McCarroll argue that they could not have been involved in the "day-to-day" operations of Safe Hurricane Shutters because they were not there every day. Of course, one can be involved in "day-to-day" (i.e., regular) operations on an intermittent basis. Thus, Heidelberger and McCarroll's argument fails semantically. But more importantly, it misses the point substantively. Again, our primary concern is the supervisor's role in causing the FLSA violation, and it is possible for a supervisor to exercise enough control to play a substantial role in causing the violation while working only part-time. In short, the fact that control was exercised only occasionally "does not diminish the significance of its existence." Donovan v. Janitorial Servs., Inc., 672 F.2d 528, 531 (5th Cir. 1982).

However, to support individual liability, there must be control over "significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." Alvarez

22

Perez, 515 F.3d at 1160 (quoting Wargo, 803 F.2d at 638). In other words, while control need not be continuous, it must be both substantial and related to the company's FLSA obligations.

With these principles in mind, we turn to the facts of this case. Viewed in the light most favorable to the plaintiffs, McCarroll was present at Safe Hurricane Shutters about two weeks per month and Heidelberger was present at least a few days but not more than one week per month. Both visited job sites to observe the progress of shutter installations, and McCarroll routinely distributed work orders to installers, describing the work they were required to complete that day. When the company started to struggle financially, Heidelberger, McCarroll and Leiva met with the installers to tell them that the company would be unable to pay them. Moreover, both Heidelberger and McCarroll promised installers that they would try to fix the problem so that the installers would eventually get paid. Heidelberger even used $20,000 of his own funds to satisfy the company's payroll obligations.

Although Heidelberger and McCarroll testified that they exercised less control than that described above, the jury was not required to believe them. And although it is undisputed that Leiva exercised more control than either of them, that does not diminish the significance of their control. McCarroll was present about half the time and had substantial supervisory powers in relation to installers. While Heidelberger was present less often, he exercised direct control over

23

whether installers got paid by using his own funds for that purpose. Moreover, both Heidelberger and McCarroll met with installers to discuss payroll issues.

Based on these facts, a reasonable jury could have found that Heidelberger and McCarroll exercised control over "significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee." Id. (quoting Wargo, 803 F.2d at 638). When combined with their substantial ownership interests, this suggests that Heidelberger and McCarroll had sufficient control of the company's financial affairs to "cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA." Baystate, 163 F.3d at 678. Therefore, the jury had a legally sufficient basis to hold Heidelberger and McCarroll individually liable, and its verdict was not against the great weight of the evidence. The district court did not err in denying Heidelberger and McCarroll's Rule 50 motion on this ground.

## 2. Fluctuating Workweek Method

Appellants argue that the district court should have granted their Rule 50 motion on the applicability of the fluctuating workweek method. However, there was sufficient evidence for the jury to find that the weekly salaries Safe Hurricane Shutters paid Feliciano and Milan were intended to compensate them for only forty hours of work. Feliciano and two other former installers testified that Leiva agreed to pay them a weekly salary for forty hours of work, and although Milan testified

that he did not know how many hours his weekly pay was intended to compensate,

there was no reason to believe that his compensation was structured differently.

Under these circumstances, we cannot say that the evidence points overwhelmingly

in favor of Appellants or that the jury's verdict was against the great weight of the

evidence. Therefore, the district court was correct to deny Appellants' Rule 50

motion on the fluctuating workweek method.

### 3. Overtime Hours

Appellants argue that the district court should have granted their Rule 50

motion because the evidence of Feliciano's and Milan's overtime hours was

insufficient to support the jury's verdict. The FLSA places upon the employee-

plaintiff "the burden of proving that he performed work for which he was not

properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680,

686–87 (1946). However, if the employer failed to keep time records, as in this

case, that burden is relaxed. Specifically, in that circumstance

> an employee has carried out his burden if he proves that he has in fact
> performed work for which he was improperly compensated and if he
> produces sufficient evidence to show the amount and extent of that
> work as a matter of just and reasonable inference. The burden then
> shifts to the employer to come forward with evidence of the precise
> amount of work performed or with evidence to negative the
> reasonableness of the inference to be drawn from the employee's
> evidence. If the employer fails to produce such evidence, the court
> may then award damages to the employee, even though the result be
> only approximate.

Id. at 687–88.  In this case, there was sufficient testimony regarding the hours

Feliciano and Milan regularly worked to allow the jury to approximate the hours

they actually worked in each week for which they sought to recover unpaid wages.

In other words, there was sufficient testimony "to show the amount and extent of

that work as a matter of just and reasonable inference."  Id. at 687.  Appellants did

not negate the reasonableness of that inference as a matter of law; therefore, the

district court did not err in denying Appellants' renewed motion for judgment as a

matter of law.  Nor can we say that the jury's verdict was against the great weight

of the evidence such that the district court abused its discretion in denying

Appellants' alternative motion for a new trial.

## D. Evidentiary Ruling

Appellants argue that they are entitled to a new trial because the district

court erroneously excluded testimony by Leiva regarding a conversation he had

with Rolando Ibacache.  Ibacache was an installer at Safe Hurricane Shutters who

was represented by the same law firm as Feliciano and Milan in a related FLSA

action against Appellants.  He was also a witness in this case.  Allegedly, Ibacache

told Leiva that one of the attorneys who represented the plaintiffs in both cases

fabricated the overtime claims against Appellants.

During cross-examination of Ibacache in this case, Appellants' counsel

asked the following: "You told Mr. Leiva that the attorney said oh, let's say you

26

worked all these hours and we'll get all these people involved and we'll say that there was a big overtime violation here when there really wasn't one. That's what you told Mr. Leiva." The district court overruled plaintiffs' counsel's hearsay objection, then Ibacache responded, "I don't remember. Maybe it is here, but I don't remember."[6] Appellants' counsel then asked, "You might have said that. You don't recall. That rings a bell. You might have said something like that. You can't deny it?" Ibacache responded, "I said I did not remember."

Three days later, Leiva testified, and Appellants' counsel asked him, "What did Mr. Ibacache tell you about the overtime lawsuit, how that got started?" However, the district court sustained plaintiffs' counsel's hearsay objection, and Leiva was not permitted to answer. In response, Appellants' counsel requested a sidebar conference, but that request was denied. Appellants represent that if their request for a sidebar conference had been granted, they would have proffered Leiva's testimony regarding his conversation with Ibacache, i.e., that Ibacache told him than an attorney fabricated the overtime claims against Appellants.

As an initial matter, Feliciano and Milan argue that Appellants have not preserved this issue for appeal because they failed to raise it in their pre-verdict motion for judgment as a matter of law under Federal Rule of Civil Procedure

---

[6] Appellants' counsel had been using Ibacache's deposition to impeach him. Presumably, when Ibacache said, "Maybe it is here," he was referring to his deposition transcript.

27

Case: 11-15743    Date Filed: 03/06/2013    Page: 28 of 40

50(a). That argument might have merit if the issue Appellants failed to raise in their pre-verdict motion was a challenge to the sufficiency of the evidence.[7] However, "[i]f there have been errors at the trial, duly objected to, dealing with matters other than the sufficiency of the evidence, they may be raised on appeal from the judgment even though there has not been either a renewed motion for judgment as a matter of law or a motion for a new trial." 9B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2540 (3d ed. 2008), available at Westlaw FPP.

In order to challenge a ruling excluding evidence, a party simply must "inform[] the court of its substance by an offer of proof, unless the substance was apparent from the context." FED. R. EVID. 103(a)(2). "Once the court rules definitively on the record—either before or at trial—a party need not renew an . . . offer of proof to preserve a claim of error for appeal." FED. R. EVID. 103(b).

In this case, the substance of Leiva's proffered testimony was obvious from its context. Ibacache had already been questioned about his alleged conversation with Leiva, and the question Appellants' counsel posed to Leiva was obviously

---

[7] In that circumstance, the scope of our review would be limited to plain error. Howard v. Walgreen Co., 605 F.3d 1239, 1243 (11th Cir. 2010). Appellants do argue that in the alternative to a new trial, the district court's erroneous evidentiary ruling entitles them to judgment as a matter of law. This might be construed as an argument that if Leiva's testimony had been admitted, the jury would have lacked a legally sufficient evidentiary basis to find for the plaintiffs. However, even assuming Leiva's testimony should have been admitted, such an argument would be meritless because the jury would not have been required to believe it.

directed at that same conversation. No doubt the district court denied Appellants'
request for a sidebar conference because it already knew the substance of the
proffered testimony. Therefore, as soon as the district court made a definitive
ruling by sustaining the hearsay objection, the issue was preserved for appeal. We
now turn to our substantive review of that ruling.

We have often stated generally that evidentiary rulings are reviewed for
abuse of discretion. See, e.g., United States v. Dortch, 696 F.3d 1104, 1110 (11th
Cir. 2012). However, things are not always so simple. While evidentiary rulings
often require an exercise of discretion that calls for this standard of review, they
may also require legal and factual determinations that call for different standards.
Specifically, "[t]he factual findings underlying [evidentiary] rulings are reviewed
for clear error." United States v. Lebowitz, 676 F.3d 1000, 1009 (11th Cir. 2012).
And questions of law underlying evidentiary rulings are reviewed de novo. See
United States v. Westry, 524 F.3d 1198, 1215 (11th Cir. 2008) ("[A] determination
of whether a statement is against the declarant's penal interest is purely a question
of law subject to de novo review."); cf. United States v. Henderson, 409 F.3d 1293,
1297 (11th Cir. 2005) ("[B]asing an evidentiary ruling on an erroneous view of the
law constitutes an abuse of discretion per se.").

In this case, Appellants argue that Leiva's testimony should have been
admitted under the statement-against-interest hearsay exception found in Federal

29

Rule of Evidence 804(b)(3).  For that exception to apply, Ibacache must have been

unavailable as a witness under Rule 804(a).  Whether a declarant is unavailable as

a witness under Rule 804(a) is a question of law that we review de novo.  In so

doing, we note that "[t]he burden of proving the unavailability of a witness under

Rule 804(a) rests with the proponent of the hearsay evidence."  United States v.

Acosta, 769 F.2d 721, 723 (11th Cir. 1985).

A declarant is considered unavailable as a witness if, among other things, the

declarant "testifies to not remembering the subject matter." FED. R. EVID.

804(a)(3).  Appellants contend that Ibacache was unavailable because he testified

that he did not remember his conversation with Leiva.  However, Rule 804(a)(3)

applies only if the declarant is unable to remember the "subject matter," i.e., if "he

has no memory of the events to which his hearsay statements relate." N. Miss.

Commc'ns, Inc. v. Jones, 792 F.2d 1330, 1336 (5th Cir. 1986).  The fact that the

witness does not remember making the statements themselves is irrelevant.  5

CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 8:112

(3d ed. 2007), available at Westlaw FEDEV.  Appellants have failed to identify,

and we have not found, any testimony by Ibacache in which he claimed not to

remember the subject matter of his alleged conversation with Leiva, i.e., whether

the overtime claims were actually fabricated.  Instead, Ibacache consistently

maintained that he and the other installers worked overtime hours for which they

30

were not compensated. Therefore, Appellants failed to satisfy their burden of

showing that Ibacache was unavailable as a witness, and the district court did not

err by excluding Leiva's testimony as hearsay.

### E. Payroll Tax Withholding

Finally, Appellants contend that the district court should have granted their

motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e)

in order to exclude the amounts they are required to withhold for payroll taxes.

"We review the denial of a motion to alter or amend a judgment under Rule 59(e)

for abuse of discretion." Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co., 508 F.3d

1337, 1341 (11th Cir. 2007).

We find no abuse of discretion in the district court's approach because

Appellants can satisfy the judgment and comply with their withholding obligations

without incurring duplicative liability. Any withholding payments they make to

the IRS or state tax authorities on Appellees' behalf will work toward satisfaction

of the judgment. And once the judgment has been satisfied, in part through such

payments and in part through payments to Appellees, Appellants may move for

relief from the judgment under Federal Rule of Civil Procedure 60(b)(5) to ensure

no further liability to Appellees.

## III. CONCLUSION

We **AFFIRM** the judgment below, as well as the district court's denial of Appellants' post-trial motions under Federal Rules of Civil Procedure 50(b) and 59(e).

PRYOR, Circuit Judge, concurring in part and dissenting in part:

I concur in the resolution by the majority opinion of some of the issues raised in this appeal. I concur in the denial of a judgment as a matter of law in favor of Francis McCarroll and Safe Hurricane Shutters, Inc., under the in pari delicto doctrine and based on the sufficiency of the evidence. I also concur in the denial of a judgment as a matter of law in favor of McCarroll on the issue of individual liability as an employer under the Fair Labor Standards Act. And I concur in the resolution of the evidentiary issues addressed in the majority opinion.

But I respectfully dissent from the resolution of the appeal for two reasons. First, the district court abused its discretion when it refused to instruct the jury about the fluctuating workweek. Second, the district court erred when it concluded that, based on the evidence presented at trial, a reasonable jury could find sufficient facts to render Heidelberger liable as an employer within the meaning of the Act. I would reverse and remand for a new trial with respect to McCarroll and Safe Hurricane Shutters, and grant a judgment as a matter of law in favor of Heidelberger.

### A. The District Court Abused Its Discretion When It Refused to Instruct the Jury About the Fluctuating Workweek Method.

The majority opinion concludes that the district court did not abuse its discretion when it refused to instruct the jury on the fluctuating workweek method, but I disagree. A refusal to give a jury instruction will amount to an abuse of

discretion when "(1) the requested instruction correctly stated the law, (2) the

instruction dealt with an issue properly before the jury, and (3) the failure to give

the instruction resulted in prejudicial harm to the requesting party." Pensacola

Motor Sales Inc. v. E. Shore Toyota, LLC, 684 F.3d 1211, 1224 (11th Cir. 2012).

Heidelberger and McCarroll have established each of these elements.

The requested jury instruction provides an accurate statement of the law on

the fluctuating workweek.  Heidelberger and McCarroll requested a jury

instruction that explained the difference between the time-and-a-half method and

the fluctuating workweek method as follows:

> The Act requires an employer to pay its employees at a rate of at least
> one and one-half times their "regular rate" for time worked in any one
> work-week over 40 hours.  This is commonly known as time-and-a-
> half pay for "overtime" work.  The employee's "regular rate" is
> simply the employee's hourly rate, for those employees compensated
> by way of an hourly rate.  All overtime hours worked must be
> compensated at one and one-half times the regular rate if an employee
> is being paid hourly.
>
> If you determine that Plaintiffs were paid a salary then the FLSA
> considers the Plaintiffs to have been paid for all hours worked at a
> straight time rate, and only an additional halftime is owed for
> overtime hours, not one and one-half their regular rates.  This can be
> demonstrated as follows: If you find a plaintiff worked 50 hours per
> week and was paid $500, his hourly rate is $10.00/hr ($500 ÷ 50 =
> $10/hr) and his half-time rate is $5 ($10/hr ÷ .5 = $5/hr).  Thus, if you
> found that such a plaintiff worked overtime one week, you would
> award him $50 ($5/hr x 10/hrs).

This instruction is consistent with the interpretive rule promulgated by the

Department of Labor.  See 29 C.F.R. § 778.114(a).  According to that rule, the

34

calculation of overtime under the fluctuating workweek method differs from the

traditional time-and-a-half calculation in two ways: (1) "the regular rate of the

employee will vary from week to week and is determined by dividing the number

of hours worked in the workweek into the amount of the salary to obtain the

applicable hourly rate for the week," and (2) "[p]ayment for overtime hours at one-

half [of the regular] rate in addition to the salary satisfies the overtime pay

requirement." Id. The requested instruction was a correct statement of the law,

and the majority opinion does not suggest otherwise.

The record also supports the potential application of the fluctuating

workweek method. The fluctuating workweek method applies "[w]here there is a

clear mutual understanding of the parties that the fixed salary is compensation

(apart from overtime premiums) for the hours worked each workweek, whatever

their number." Id. Mario Feliciano testified that his hours varied each week, but

that he received the same salary each week, no matter how many hours he worked.

And the defendants introduced Feliciano's letter of employment, which said that

Feliciano earned $800 per week, not $800 for the first 40 hours he worked each

week. Augustin Milan testified that "there was a clear and mutual understanding

between [him] and the company that when [he] would work each week no matter

how many hours [he] worked [he] would get that same amount of pay." Because

the shutter installers could not be salaried employees who are ineligible for

35

Case: 11-15743    Date Filed: 03/06/2013    Page: 36 of 40

overtime, an agreement of this sort would evidence a fluctuating workweek

agreement, and the majority opinion does not suggest otherwise.

The failure to give the instruction on the fluctuating workweek method

prejudiced Heidelberger and McCarroll. The district court not only refused to give

any jury instruction that described the fluctuating workweek method, but it

repeatedly instructed the jury as follows that, if the employees proved that they had

worked more than 40 hours per week, the employees would be owed time-and-a-

half:

> This case arises under the Fair Labor Standards Act, the [f]ederal law
> that among other things provides for the payment of time-and-a-half
> overtime pay. The plaintiffs claim that the defendants did not pay
> them the overtime pay required by law.

> The plaintiffs, in fact, claimed that they were not paid overtime or
> straight time or, in other words, they were only paid for the first 40
> hours they worked each week and were not paid at all for the hours
> they worked in addition to 40 hours.

> Therefore, the term overtime in this case includes such overtime–
> includes both–such overtime and straight time.

> . . .

> The [A]ct requires an employer to pay its employee at a rate of at least
> one-and-a-half times their regular rate for the time worked in one
> week over 40 hours. This is commonly known as time-and-a-half pay
> for overtime worked.

> The employee's regular rate during a particular week is the basis for
> calculating any overtime pay due him for that week. The regular rate
> for a week is determined by dividing the first 40 hours worked into
> the total wages paid for those 40 hours. The overtime rate then would

36

be one-and-a-half of that rate and would be owing for each hour in excess of 40 hours worked during the workweek.

. . .

If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay on which time-and-half hours must be paid is computed by dividing the salary by the number of hours which the salary is intended to compensate. For example, if an employee is hired at a salary of $220.80 for a 40-hour week, his regular rate is $5.52 an hour.

The majority opinion contends that the jury instructions adequately instructed the jury about the fluctuating workweek method, but that contention fails for two reasons. First, the majority opinion alleges that "[t]he district court properly instructed the jury to calculate Appellees' regular rates of pay using the number of hours their salaries were intended to compensate," Majority Opinion at 17, but the majority opinion fails to quote the relevant jury instruction. The instruction required the jury to award only time-and-a-half on the regular rate: "If the employee is employed solely on a weekly salary basis, his regular hourly rate of pay on which time-and-a-half hours must be paid is computed by dividing the salary by the number of hours which the salary is intended to compensate." That instruction is fundamentally inconsistent with the application of the fluctuating workweek method, under which only half-time is owed. Second, the majority opinion suggests that the vague instruction that "[t]he measure of damages is the difference between what the employee should have been paid under the act and the

amounts that you find were actually paid" satisfactorily instructed the jury about the fluctuating workweek method, id., but that instruction neither informed the jury of the existence of the fluctuating workweek method nor informed the jury how to calculate it.  Because the jury was never informed that the employees might be owed only half-time, Heidelberger and McCarroll were prejudiced by the jury instructions, and the district court abused its discretion when it refused to instruct the jury about the fluctuating workweek method.

### B. Heidelberger Is Not an Employer Within the Meaning of the Act.

The majority opinion also erroneously concludes that the evidence establishes a legally sufficient basis to hold Heidelberger liable as an employer under the Act.  Id. at 24.  A director of a company will be held liable as an employer under the Act only if he "ha[s] operational control of significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee.'"  See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008) (internal quotation marks omitted).  The majority opinion concludes that Heidelberger meets this standard because he: (1) was present at Safe Hurricane Shutters at least a few days but not more than one week per month; (2) visited job sites to observe the progress of shutter installations during some of those visits; (3) met with installers toward the end of the life of the business to tell the installers that the company would not be

able to pay them on time; and (4) used $20,000 of his own funds to satisfy the

payroll obligations. Majority Opinion at 23. But these isolated incidents do not

establish the day-to-day operational control of the business required by our

precedents.

The testimony of the installers at trial establishes that Heidelberger was not

involved in the day-to-day operation of the business. When he visited the two

largest job sites, Heidelberger did nothing more than observe the progress of the

installers at two big projects. He did not instruct the installers on their work

because he did not know how to install shutters. He also could not communicate

with most of the installers because he spoke "[v]ery, very little" Spanish, and the

primary language of most of the installers was Spanish. Heidelberger never gave

the installers work orders, and Milan testified that he "never knew" Heidelberger.

Heidelberger's one-time participation in a payroll dispute toward the end of the life

of the company does not establish that he exercised day-to-day control.

Our decision in Patel v. Wargo, 803 F.2d 632 (11th Cir. 1986), is instructive.

Like Heidelberger, Wargo was a director of and a principal, but not majority,

stockholder in a company. Id. at 637. Unlike Heidelberger, Wargo was also

president of that company. Id. Nevertheless, the district court found that Wargo

was neither responsible for the contract of the plaintiff employee nor involved in

the day-to-day operation of the business, and we affirmed. Id. at 638. Similarly,

39

Heidelberger had no responsibility for the contracts with Feliciano or Milan and was not involved in the day-to-day operations of Safe Hurricane Shutters. The installers presented no testimony that they were instructed to ask questions of Heidelberger in the absence of the Chief Executive Officer, Edward Leiva; that Heidelberger had any authority to act without Leiva's approval; or that Heidelberger resolved day-to-day problems on his short visits to the business each month. Based on these facts, I would conclude that Heidelberger "lacked the operational control necessary for the imposition of liability as an 'employer' under the [Act]." See id.

I concur in part and dissent in part. I concur in the decision that McCarroll and Safe Hurricane Shutters are not entitled to a judgment as a matter of law, but I would reverse and remand for a new trial with respect to McCarroll and Safe Hurricane Shutters and grant a judgment as a matter of law in favor of Heidelberger.